OPINION OF THE COURT
Meyer, J.
 Whether CPLR 302 (subd [a], par 3, cl [ii]) permits the courts of New York to take jurisdiction of a Greek entity with respect to its claimed conversion of property in Greece or on *322 the high seas, and whether a contract provision selecting Greece as the sole forum for disputes between the parties covers that conversion claim are the issues presented by this appeal. The Appellate Division, two Justices dissenting, held there was sufficient injury within the State upon which to base jurisdiction and that the forum selection clause was no bar. We disagree with the Appellate Division’s conclusions on the jurisdiction issue and, therefore, do not reach the question concerning the effect of the forum selection clause.
The predicate for the appeal is a motion by third-party defendant Synergal, Ltd., to dismiss the third-party complaint served by defendant third-party plaintiff Standard Importing Co. The other actor in the events preceding the dispute is Fantis Foods, Inc., which is plaintiff in the original action against Standard Importing. Synergal is a co-operative association of Greek dairy producers organized under the laws of Greece, having offices in Athens, Greece, and which was served with process in Greece. No claim is made that Synergal is qualified in, has any assets in, or transacts business in New York. Standard is a New York corporation, with offices in New York, Chicago and Athens. Fantis is also a New York corporation with offices in New York City. Standard and Fantis are competitors in the wholesaling of Greek feta cheese.
By contract dated July 26, 1976 Synergal agreed to sell 1,200 barrels of feta cheese to Standard "FOB Piraeus”, the weighing and delivery of the cheese to "take place in the offices of the Factory or the Refrigerated Warehouses of Ioannina” and the cheese to be "[f]rom the time it leaves the factory * * * the responsibility of the Buyer.” The contract included as a separate paragraph a forum selection provision making Greek courts the exclusive forum to decide disputes between the parties.
Standard claims, and it is not disputed, that about three weeks after the contract was signed the 1,200 barrels of cheese were weighed and each barrel stamped with Standard’s trade-mark and that Standard then acknowledged delivery by giving Synergal a certificate of weight and quality. Thereafter Standard directed Synergal to ship the cheese in four lots of 300 barrels each to Chicago. The first 300 barrels were shipped on a bill of lading to the order of a New York bank, which named Standard as the "notify” party and showed Chicago as *323 the destination, the cheese to be forwarded from New York to Chicago in bond.
Though Standard had established the letter of credit required by the contract, Synergal never sought to draw upon it for the 300 barrels shipped, nor has it ever delivered the other 900 barrels to Standard. Instead, for a reason unexplained by the record, Synergal sold the same 1,200 barrels of cheese to Fantis and while the first shipment was on the high seas substituted Fantis on the original bill of lading as the ultimate consignee. While Fantis and not Standard received the last 900 barrels, Standard was able, notwithstanding the bill of lading change, to obtain delivery of the first 300 barrel shipment, for which it has never paid.
Fantis then brought action against Standard, the bank and the shipping company for the diversion of the 300 barrels, claiming as to Standard that it had wrongfully taken possession of them. By its answer Standard stated as a counterclaim against Fantis and a third-party claim against Synergal a cause of action for conversion of the entire 1,200 barrels, which it contends became its property under the terms of its contract upon the weighing of the cheese and its acknowledgment of delivery, Synergal, thereafter, holding the cheese only in a custodial and not in an ownership capacity. It also stated, in what it labeled a fourth "counterclaim”, a cause of action for Synergal’s breach of contract in interfering with the initial 300-barrel shipment and refusing to ship the additional 900 barrels.
Synergal moved to dismiss the claims against it both because of the absence of personal jurisdiction over it and because of the contract provision making Greek courts the exclusive forum for disputes between the parties. Special Term denied the motion and the Appellate Division majority affirmed. Agreeing that the claimed conversion of the final 900 barrels[1] occurred in Greece, it reasoned that Synergal’s virtual monopoly of feta cheese made it foreseeable that favoring one New York based competitor over another would cause injury in New York to the latter. No distinction was drawn either by Special Term or by the Appellate Division between the conversion claim and the breach of contract claim against Synergal. The Appellate Division majority held the forum selection *324 clause inapplicable because the claimed conversion was not an act arising from the contract and because the contract was one of adhesion. The dissenting Judges reasoned that the claim was essentially one for breach of contract, but that, assuming, arguendo, a conversion, any damage in New York was consequential rather than direct and, therefore, an insufficient basis for jurisdiction. The Appellate Division thereafter granted leave to appeal on the certified question: "Was the order of the Supreme Court, as affirmed by this Court, properly made?” The Appellate Division’s order should be reversed, the third-party complaint should be dismissed and the certified question should be answered in the negative.
The answer clearly pleads two distinct third-party claims, the first for conversion and the second for breach of contract. Both have been sustained, the contract claim notwithstanding the total absence from the papers of any suggestion of a basis that would support jurisdiction of such a claim, on the apparent theory that because the same acts gave rise to both claims jurisdiction over both could be supported by CPLR 302 (subd [a], par 3). However, the Judicial Conference Report to the Legislature, which preceded enactment of chapter 590 of the Laws of 1966 adding present paragraph 3 to the section,[2] shows that premise to be false, for it expressly noted that the jurisdiction to be conferred by the new provision would be "limited to a cause of action arising out of such tortious act” (Twelfth Ann Report of NY Judicial Conference, 1967, p 343). While a breach of contract may give rise to a separate tort liability (North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171, 179; Albemarle Theatre v Bayberry Realty, 27 AD2d 172, 176), the two are conceptually distinct liabilities, and the cause of action for breach of contract is conceptually unrelated to the tortious nature of the act which constitutes the breach (Amigo Foods Corp. v Marine Midland Bank-New York, 39 NY2d 391, 396, on second app 46 NY2d 855). It was, therefore, clearly erroneous not to dismiss Standard’s contract claim (fourth "counterclaim”) against Synergal.
It was likewise error not to dismiss the tort claim, because there was neither an injury in New York nor foreseeability of New York consequences within the meaning of CPLR 302 (subd [a], par 3). That provision authorizes our *325 courts to exercise personal jurisdiction over a nondomiciliary who
"commits a tortioiis act without the state causing injury to person or property within the state * * * if he
* * *
"(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.”
Since the complaint pleads that Synergal is a Greek entity Standard must, in order to establish jurisdiction, show (1) Synergal’s commission of a tort outside New York, (2) injury to Standard in New York, (3) that Synergal should reasonably have foreseen New York consequences, and (4) that Synergal derives substantial revenue from international commerce.
Standard’s first "counterclaim” alleges, and Synergal has not denied, that Synergal exports each year to United States purchasers more than 250 tons of dairy products worth in excess of $1,000,000. For purposes of this decision we accept that as a sufficient showing that facts "may exist” (Peterson v Spartan Ind., 33 NY2d 463, 466) to establish the fourth (substantial revenue) requirement (cf. Allen v Canadian Gen. Elec. Co., 65 AD2d 39; Allen v Auto Specialties Mfg. Co., 45 AD2d 331). Whether facts to sustain the first requirement "may exist” is more problematical, for Standard’s first "counterclaim” does not plead the law of Greece (see CPLR 3016, subd [e]) and we have neither been requested to take judicial notice of that law nor furnished the information necessary to our doing so (see CPLR 4511, subd [b]). It is not entirely clear, therefore, that Standard’s contentions that it acquired title upon acknowledging delivery after the weighing of the cheese and that Synergal’s acts thereafter constituted a wrongdoing can be sustained under the law of Greece, where the contract was to be performed and where the claimed wrongful acts occurred. If, however, we assume for purposes of decision that New York law applies, that title passed at Ioannina in view of the express provision for weighing and delivery there (cf. Uniform Commercial Code, § 2-319, subd [1], par [a]), and that Synergal’s acts in attempting to divert the first 300 barrels and in fact diverting the other 900 barrels to Fantis constituted a conversion, Standard still cannot sustain jurisdiction in this case.
 The difficulty is that the conversion occurred either in *326 Greece or on the high seas. The usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest (Wallingford v Kaiser, 191 NY 392; Adams v Loomis, 44 Hun 627, opn in 7 NY St Rep 592; Fuchsberg, Encyclopedia of New York Law, Damages, § 902). Profits lost are generally disallowed (Wehle v Haviland, 69 NY 448; Moravec v Grell, 78 App Div 146), though they may be recoverable if they may reasonably be expected to follow from the conversion (Barrington v Offenbach, 163 NYS 423; see 10 NY Jur, Conversion, § 75, p 591; Fuchsberg, Encyclopedia of New York Law, Damages, § 915). If, however, we assume that the allegation that Synergal is the "sole or dominant exporter and seller” of Greek feta cheese is sufficient to establish for jurisdictional purposes that the converted cheese could not be replaced by Standard and that it, therefore, would be entitled to lost profits if successful on its first counterclaim, there is still no basis for finding loss of profits from a New York transaction[3] or reasonable foreseeability of such a loss.[4] In final analysis the only possible connection between the claimed conversion and any injury or foreseeable consequence in New York is the fact that Standard is incorporated and maintains offices there. It has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the. indirect financial loss resulting from the fact that the injured person resides or is domiciled there (see Sybron Corp. v *327 Wetzel, 46 NY2d 197, 205; Kramer v Hotel Los Monteros, S. A., 57 AD2d 756, 757, app den 43 NY2d 649; Black v Oberle Rentals, 55 Misc 2d 398, 400; Lehigh Val. Inds. v Birenbaum, 527 F2d 87, 94; American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp., 439 F2d 428, 433; Friedr. Zoellner [New York] Corp. v Tex Metals Co., 396 F2d 300, 303; Chemical Bank v World Hockey Assn., 403 F Supp 1374, 1380; Spectacular Promotions v Radio Sta. WING, 272 F Supp 734, 736-737; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C302:20, pp 87-88; ibid., 1979-1980 Supp, pp 26-27; Siegel, New York Practice, § 88, p 105). If a plaintiff could satisfy the requirements of CPLR 302 (subd [a], par 3, cl [ii]) on so attenuated a consequence of defendant’s act as has been accepted by the courts below, it would "burden unfairly non-residents whose connection with the state is remote” (Memorandum of Judicial Conference, McKinney’s Session Laws of NY, 1966, p 2911; Twelfth Ann Report of NY Judicial Conference, 1967, p 342). So to hold would be contrary to the legislative intent thus expressed and to the rule that a statute is to be construed so as to avoid grave doubts concerning its constitutionality (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, p 324).
For the foregoing reasons the order of the Appellate Division should be reversed, with costs, the third-party claims stated in Standard’s first and fourth counterclaims should be dismissed, and the certified question answered in the negative.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

. As to the first 300 barrels there was either no conversion, as the majority reasoned, or, in any event, no damage since Standard actually obtained possession of them.

. For the genesis of the provision see Sybron Corp. v Wetzel (46 NY2d 197).

. Sybron Corp. v Wetzel (46 NY2d 197) is not to the contrary for we there found that the defendant who was accused of stealing plaintiffs trade secrets had actively solicited and obtained orders in New York from plaintiffs prior "major customer”, Eastman Kodak (46 NY2d, at pp 205-206). Here by Standard’s own admission, confirmed by the ultimate destination shown on the bill of lading for the first 300-barrel shipment, the cheese was to be delivered to Chicago, not New York. The probability of a direct New York injury is, therefore, at best speculative.

. We recognize that "foreseeability relates to forum consequences generally and not to the specific event which produced injury within the state” (Twelfth Ann Report of NY Judicial Conference, 1967, p 344), but note that here in view of the destination of the cheese there is no basis other than sheer speculation for finding loss of any New York sales. We are also aware of the Supreme Court’s holding in World-Wide Volkswagen Corp. v Woodson (444 US 286, 297) that "the foreseeability that is critical to due process analysis is * * * that the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there”, but do not find it necessary to consider the effect of that holding on the provision under discussion since Standard has not established foreseeability under our more broadly worded statute.