AMERICAN WHITE CROSS LABORATORIES, INC., Plaintiff,

v.

H.M. COTE, INC., a corporation of the Province of Quebec, Canada and Henry M. Cote, a Canadian citizen, Defendants.

No. 82 Civ. 8580–CSH.

United States District Court, S.D. New York.

Feb. 14, 1983.

Auslander & Thomas, New York City, for plaintiff; M. Arthur Auslander, New York City, of counsel.

Netter, Dowd & Alfieri, New York City, for defendants; Paul Frohman, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff American White Cross Laboratories, Inc. ("White Cross") brings this action for trademark infringement, unfair competition, breach of fiduciary relationship and trade secrets, and declaratory judgment against defendants H.M. Cote, Inc. and Henry M. Cote. Jurisdiction in this Court is asserted under the Lanham Act, 15 U.S.C. § 1121; the provisions for federal question and trademark jurisdiction, 28 U.S.C. §§ 1331(a), 1338; and diversity, § 1332. The last jurisdictional basis arises from White Cross's status as a New York corporation, while defendant H.M. Cote, Inc. is a Canadian corporation and the individual defendant a citizen and resident of Canada.

The case is before the Court on White Cross's motion for a preliminary injunction

which would enjoin defendants, both in the United States and Canada, from infringing plaintiff's trademark WHITE CROSS in respect of bandages, first aid supplies and related goods, or from engaging in unfair competition in respect of the same. White Cross also seeks an order of sequestration or replevin in respect of its bandage-making machine, the "Wallerstein I," which defendants are currently using in Canada.

Defendants cross-move to dismiss the complaint for lack of jurisdiction and improper venue, or alternatively on the ground of *forum non conveniens.* The Court directed that these issues be first addressed at oral argument and in post-argument submissions. Jurisdiction and venue are now considered in this opinion.

## I.

White Cross is in the business of creating, designing and selling adhesive and surgical bandages, tapes and dressings, and other first aid supplies. It sells its products to the wholesale and retail trade. Goods are sold under the WHITE CROSS trademark. In addition, much of plaintiff's business consists of manufacturing articles which are then sold to customers for resale under the latter's private trademark. Such business is generated by White Cross's solicitations and advertisements addressed to the trade, which material contains the WHITE CROSS trademark and tradename. For many years, as early as 1912, plaintiff has sold its goods in the United States and Canada. Plaintiff has registered its WHITE CROSS trademark in both countries.

White Cross manufactures the bandages and dressing on machines of its own design, using systems which White Cross alleges constitute trade secrets.

In 1974 White Cross entered into a joint venture with defendant Henry M. Cote, a citizen and resident of Canada. White Cross alleges that Cote initiated these negotiations, and came to New York for the purpose of conducting them. The parties formed White Cross Industries, Inc. ("Industries"), a Canadian corporation, for the manufacture of adhesive bandages by the joint venture, and the sale of White Cross's products in Canada. As a part of the joint venture, Cote became exclusive agent for Industries in parts of Canada for White Cross branded merchandise.

By virtue of the joint venture, White Cross alleges, it provided its specially designed bandage-making machine, the "Wallerstein I," to Industries, and provided Industries with other equipment, knowhow and trade secrets. Cote became president of Industries.

By resolution adopted March 7, 1978 Industries was liquidated, and the former joint venturers executed two replacement agreements. The first, styled a "royalty agreement," signed on April 11, 1978, was between White Cross and defendant H.M. Cote, Inc. White Cross appointed the corporate defendant the exclusive user of the WHITE CROSS trademark in Canada, as well as the exclusive distributor in Canada for all WHITE CROSS brand products, in consideration of specified royalties, the term of the agreement to be coterminous with the second contract, a "rental agreement." By this agreement, dated March 1, 1979 and also between White Cross and the corporate defendant, the former rented the "Wallerstein I" machine to the latter for a term of two years, to be delivered and installed at Cote's place of business in Canada, the agreement to be automatically renewable for two-year terms absent notice. White Cross has given notice of its intention not to renew; the present term expires on February 28, 1983. The agreement does not restrict use of the machine to the manufacture of bandages bearing the WHITE CROSS trademark, and Cote has been using it to manufacture bandages under its own labels.

Both agreements were executed by Cote in Canada, and by White Cross in New York.

During the years 1979–1982, defendants sold White Cross bandages which were delivered to White Cross in New York. However, this relationship terminated, at White

Cross's initiative, in February, 1982. Defendants' counsel represents without contradiction that they have made no sales to White Cross since that time.

The parties entered into negotiations for a renewal of the royalty agreement. However, on June 22, 1982 Cote wrote to Jack Orentzel, the president of White Cross, as follows:

"This is to give you official notice that effective May 31st, 1982, we have completely discontinued the sale of White Cross brand adhesive bandages for which we have paid you royalty for many years.

"We have replaced White Cross with our own 'Rico' brand combined with our new corporate logo which you see at the top of the page.

"As of May 31st, the White Cross logo and name have been removed from all other products, all stationery, as well as our building.

"Therefore, there is no point in any further negotiation on a royalty agreement.

"In a separate letter, we resume the different considerations that have led us to this decision."

This litigation was triggered when White Cross representatives observed exhibits of defendants' products at trade expositions in Chicago in October and November, 1982. The defendants' products and brochures included a display of a white cross which plaintiff alleges to be infringing.

Defendant H.M. Cote, Inc. has applied in Canada for registration of a trademark in that country which displays a white cross followed by the word "RICO." Insofar as the present record appears, White Cross has not challenged that application in Canada. However, in 1979 White Cross opposed the application of White Cross Surgical Instruments Limited, a Canadian corporation unrelated to any party here, for a trademark displaying a white cross on medical equipment including "dressings and bandages." Plaintiff's opposition alleged that the requested trademark was confusing with its own WHITE CROSS trademarks, which had been previously used in Canada. The Canadian authorities rejected the opposition under the Canadian Trade Mark Act, holding that "the trade mark of the applicant is not confusingly similar to any of the trade marks of the opponent and that the trade mark is distinctive." Opinion of G. Metcalfe, Chairman of the Opposition Board, dated September 20, 1979.

The complaint in the case at bar was filed on December 23, 1982. Neither defendant maintains an office or residence in New York. Process was served in Canada by a bailiff of the Superior Court of the Province of Quebec pursuant to Rule 4(e), F.R. Civ.P., and N.Y.C.P.L.R. §§ 302 and 313. The complaint alleges trademark infringement, unfair competition, tortious breach of a fiduciary relationship, breach of contract, and wrongful possession of the "Wallerstein I." The relief White Cross requests by preliminary injunction is set forth in the margin;[1] it also prays for replevin of the "Wallerstein I."

---

1. Plaintiff's notice of motion prays the Court:
"1. That it enter, pursuant to Rule 65 of the F.R.C.P., a preliminary injunction in plaintiff's favor, enjoining the corporate defendant, H.M. Cote, Inc., its owners, officers, agents, employees, privies, successors and assigns and all holding by, through or under them, and all those acting for or on their behalf both in the United States and Canada; and the individual defendant, Henry M. Cote, his agents, employees, privies, successors and assigns and all holdings by, through or under him, and all those acting for or on his behalf both in the United States and Canada from:

"A. infringing plaintiff's rights in and to its trademark WHITE CROSS in words or in symbol;
"B. using the trademark WHITE CROSS, or any colorable imitation or simulation thereof or any other mark confusingly similar therewith on or in connection with the sale, manufacture, distribution, offering for sale, advertising or promoting of bandages, first aid supplies and related goods;
"C. using any illustrations or in any manner simulating the WHITE CROSS trademarks;
"D. in any manner competing unfairly with plaintiff in the manufacture, sale, distribution, advertising and promotion of bandages, first aid supplies and related goods;
"E. committing any act which in and of itself or from the manner or under the cir-

## II.

White Cross, in aid of this Court's subject matter jurisdiction, invokes the Lanham Act and the diversity statute. Both statutes require a showing of *in personam* jurisdiction over Canadian defendants, individual and corporate. Defendants deny that they are subject to personal jurisdiction in New York. White Cross does not suggest that either defendant does business in the traditional sense that would implicate N.Y. C.P.L.R. § 301. Reliance is had on the New York long-arm statute, C.P.L.R. § 302. If long-arm jurisdiction exists, venue over these alien defendants is proper here because "[a]n alien may be sued in any district." 28 U.S.C. § 1391(d).

█ Assuming *arguendo* that personal jurisdiction over defendants exists, the complaint must be dismissed to the extent that it seeks to reach or restrain defendants' acts in Canada. There is no subject matter jurisdiction under the Lanham Act; and diversity jurisdiction must yield to the doctrine of *forum non conveniens*. *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633 (2d Cir.1956), furnishes controlling authority in this Circuit on both points.

In *Vanity Fair Mills,* the defendant was a Canadian corporation which had registered the name VANITY FAIR in Canada. Plaintiffs, holders of that trademark in the United States, brought an action against the Canadian use of the name. Observing that the "Lanham Act itself gives almost no indication of the extent to which Congress intended to exercise its power in this area," the Second Circuit nevertheless held that Congress did not intend that the infringement remedies of the Act should reach "acts committed by a foreign national in his home country under a presumably valid trademark registration in that country." 234 F.2d at 642.

And the Second Circuit reached that conclusion even though, unlike the present defendants, the Canadian defendant in *Vanity Fair Mills* maintained a regular and established place of business within this District. *Id.* at 637.

In its construction of the Lanham Act's extraterritorial application against foreign citizens, *Vanity Fair Mills* is squarely in point and remains the law of this Circuit. The present defendants are Canadian citizens. The plaintiff seeks to restrain acts committed by Canadian residents upon Canadian soil. Furthermore, the defendants have applied to the Canadian authorities to register the WHITE CROSS–RICO trademark which plaintiff alleges to be infringing; and, judging by the decision of the Canadian trademark authorities in the White Cross Surgical Instruments Limited case, discussed under Point I, *supra,* defendants would appear to have some reasonable prospect of success. There is some force to defendants' contention that their trademark, consisting of a white cross followed

cumstances in which it is done would have a tendency to prejudice or destroy any of plaintiff's rights in and to its WHITE CROSS trademarks or the reputation and goodwill attaching thereto;

"F. palming off bandages, first aid supplies and/or related goods as plaintiff's;

"G. infringing plaintiff's rights in and to its registered trademarks WHITE CROSS for bandages, first aid supplies and related goods including any advertising thereof;

"H. in any manner competing unfairly with plaintiff in the manufacture, importation, exportation, distribution, sale, advertising and promotion of bandages, first aid supplies and related goods;

"I. committing any act which in and of itself or from the manner or under the circumstances in which it is done would have a tendency to prejudice or destroy any of plain-

tiff's rights in and to its trademarks, both registered and unregistered, and/or its designations of origin, or the reputation and goodwill attached thereto;

"J. in any manner palming off goods as those of the plaintiff;

"K. in any manner aiding or abetting others to palm off their goods as those of plaintiff's;

"L. in any manner competing unfairly with plaintiff in the distribution, sale, advertising or promotion of their respective products;

"M. continuing to use the Wallerstein I machine;

"N. copying, or causing to be copied, the Wallerstein I machine;

"O. using trade secrets revealed by plaintiff in confidence;

"P. revealing to others trade secrets disclosed by plaintiff in confidence.

by the word "RICO" and the "TM" designation bears a less close resemblance to plaintiff's WHITE CROSS trademark than does the trademark sustained against plaintiff's opposition in the White Cross Surgical Instruments Limited case.

■ I regard *Vanity Fair Mills* as controlling authority for the proposition that insofar as White Cross alleges trademark infringement and unfair competition occurring within Canada, the complaint does not state a claim arising under the laws of the United States.

■ With respect to diversity jurisdiction, I would (assuming the existence of personal jurisdiction over these defendants) exercise my discretion and decline to retain jurisdiction over that portion of the case arising in Canada and governed by Canadian trademark or contract law. I would do so for precisely the reasons summarized by the Second Circuit in *Vanity Fair Mills* at 645–648. I recognize, of course, that plaintiff is an American citizen, but so was the plaintiff in *Vanity Fair Mills*. For more recent Second Circuit authority relegating an American corporate plaintiff to a foreign tribunal under the doctrine of *forum non conveniens,* see *Alcoa Steamship Co., Inc. v. M/V NORDIC REGENT,* 654 F.2d 147 (2d Cir.), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980).

■ We are left, then, with the complaint insofar as it alleges acts committed by defendants causing injury to plaintiff within New York. Lanham Act jurisdiction extends to acts of trademark infringement and unfair competition by a foreign entity in the United States. *Vanity Fair Mills* at 647 n. 21. Nor would "American issues," if identifiable and discrete, be subject to dismissal for *forum non conveniens. Id.* at 647–48. But a basis for personal jurisdiction in New York must still be established.

■ Cote's advertising activities at the Chicago expositions are not sufficient for that purpose. They may subject Cote to Illinois long-arm jurisdiction,[2] but that is a question of Illinois law which is not before me.

■ White Cross argues that Cote's allegedly wrongful acts, in Canada and Illinois, cause White Cross economic harm in New York, its state of incorporation. This is said to establish long-arm jurisdiction under CPLR § 302(a)(3), which authorizes New York courts to exercise personal jurisdiction over a nondomiciliary who:

> "commits a tortious act without the state causing injury to person or property within the state . . . if he
>
> \*        \*        \*        \*        \*        \*
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

This jurisdictional argument fails. In *Fantis Foods, Inc. v. Standard Importing Co., Inc.,* 49 N.Y.2d 317, 425 N.Y.S.2d 783, 402 N.E.2d 122 (1980), the Court of Appeals held:

> "In final analysis the only possible connection between the claimed conversion and any injury or foreseeable consequence in New York is the fact that Standard is incorporated and maintains offices there. It has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss re-

**2.** Cf. *Miller Brewing Company v. Carling O'Keefe Breweries of Canada, Ltd.,* 452 F.Supp. 429 (W.D.N.Y.1978), in which defendant Canadian brewery showed television commercials in Buffalo which infringed plaintiff's trademark. Judge Elvin observed, in a footnote illustrating principles pertinent to the case at bar:

"Carling conceded at oral argument that by causing its HIGHLITE commercials to be tel-
evised in Buffalo long-arm jurisdiction exists as to said commercials, but adamantly disputed personal jurisdiction over HIGHLITE labels appearing on its product sold in Canada. As to the latter point, Miller does not contend that this court has jurisdiction over the sales of products bearing the HIGHLITE label in Canada." 452 F.Supp. at 442 n. 6.

sulting from the fact that the injured person resides or is domiciled there." (citing cases). 49 N.Y.2d at 326, 425 N.Y.S.2d at 787, 402 N.E.2d at 126.

The principle declared by the Court of Appeals in *Fantis* (which reversed the Appellate Division holding White Cross cites in its brief) is squarely applicable. The Second Circuit, in its construction of the New York long-arm statute, has also rejected this "sort of derivative commercial injury in the state" resulting solely from plaintiff's New York domicile. *American Eutetic Welding Alloys Sales Co., Inc. v. Alloys Corp.,* 439 F.2d 428, 433 (2d Cir.1971).

The complaint alleges no direct interference by Cote with White Cross's customers or business in New York. This serves to distinguish *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978), upon which White Cross also relies. The *Fantis Foods* court said of *Sybron:*

> "*Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055, is not to the contrary for we there found that the defendant who was accused of stealing plaintiff's trade secrets had actively solicited and obtained orders in New York from plaintiff's prior 'major customer', Eastman Kodak (46 N.Y.2d, at pp. 205–206, 413 N.Y.S.2d, pp. 131–132, 385 N.E.2d, pp. 1058–1059). Here by Standard's own admission, confirmed by the ultimate destination shown on the bill of lading for the first 300-barrel shipment, the cheese was to be delivered to Chicago, not New York. The probability of a direct New York injury is, therefore, at best speculative." 49 N.Y.2d at 325 n. 3, 425 N.Y.S.2d at 786 n. 3, 402 N.E.2d at 125 n. 3.

An affidavit submitted by the president of White Cross in opposition to Cote's jurisdictional motion avers on information and belief that defendants are presently negotiating "an arrangement in New York with Acme Cotton Products, Inc." of Valley Stream, "an important competitor of plaintiff's," and "have already sold equipment to them."[3] Depending on the terms of the "arrangement" and the nature of the "equipment" sold, this may constitute the sort of in-state activity held sufficient to sustain jurisdiction in *Sybron.* This aspect may be pleaded in an amended complaint, if White Cross is so advised. See Point III, *infra.*

■ Plaintiff's final argument in support of personal jurisdiction over defendants is that Cote's negotiations with White Cross were tainted by bad faith from the start, as part of a plot to acquire White Cross trade secrets. Since Cote came to New York to discuss the original joint venture with White Cross, the case is said to fall within CPLR § 302(a)(1). That subsection gives jurisdiction over a non-domiciliary in respect of resulting causes of actions if he "transacts any business within the state." White Cross theorizes that "implementation of the plot to obtain trade secrets and trademarks amounted to transacting business under (a)(1)." Counsel's letter of January 24, 1983 at p. 1.

This is a strained reading of the statute. Cote's activities in New York led to the creation and implementation of the joint venture. The causes of action alleged in the complaint cannot be regarded as "arising from" that transaction of business; the joint venture no longer exists.

A better argument is available under § 302(a)(2), which refers to a non-domiciliary who "commits a tortious act within the state." Accepting *arguendo* plaintiff's "plot" theory, Cote's actions in New York were arguably tortious.

■ The plot theory, strenuously urged by plaintiff in opposition to Cote's jurisdictional motion, is not specifically pleaded in the complaint, at least insofar as its suggested genesis *in New York* is concerned. Paragraph 18 alleges only that in 1974 Cote "approached plaintiff proposing a joint venture in Canada," and that the parties "caused the formation of Industries, a Canadian corporation, for the purpose of such

3. Orentzel affidavit of January 21, 1983 at ¶¶ 18–19.

venture." It is only in respect of Cote's *subsequent* operation of Industries that acts of bad faith by Cote are first alleged, ¶¶ 22–26, a pattern of wrongful behavior which is said to have continued after the joint venture was liquidated and the rental and royalty agreements came into being. The complaint accuses Cote throughout of acting "in breach of his fiduciary duty to plaintiff"; but a fiduciary duty arises only after the relationship in question has been created, and White Cross's presently articulated charge, insofar as it relates to New York actions, is essentially one of fraud in the inducement, which the complaint does not plead.

In these circumstances, White Cross's assertions in its motion papers of tortious acts by Cote in New York are insufficient to establish jurisdiction for the purposes of § 302(a)(2), or even to justify discovery on the issue. Cf. *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 93–4 (2d Cir.1975).

### III.

The present complaint will be dismissed for lack of personal jurisdiction over these defendants. It necessarily follows that plaintiff's motion for a preliminary injunction is denied.

Plaintiff is granted leave to file and serve an amended complaint within twenty (20) days of the date of this Opinion. The amended complaint must contain allegations of sufficient specificity and detail to establish that facts "may exist" which would establish personal jurisdiction over one or both defendants. *Peterson v. Spartan Industries, Inc.,* 33 N.Y.2d 463, 466, 354 N.Y.S.2d 905, 907, 310 N.E.2d 513, 515, (1974).

■ Plaintiff should bear in mind, however, that even if defendants are subject to jurisdiction in New York, under the principle of *forum non conveniens* this Court will not consider defendants' acts in Canada. The amended complaint must be limited to acts of trademark infringement and unfair competition within the United States. Plaintiff may wish to consider, in those

circumstances, the pursuit of broader remedies in the courts of Canada.

### CONCLUSION

Plaintiff's motion for a preliminary injunction is denied. Defendants' cross-motion to dismiss the complaint is granted, and the Clerk is directed to dismiss the complaint without prejudice and without costs. Plaintiff is granted leave to amend the complaint consistent with this Opinion.

It is So Ordered.