Harvey M. SMITH, Plaintiff,

v.

MORRIS & MANNING, A Co-Partnership, Nicholas Sears and James Altenbach, Defendants.

No. 85 Civ. 2106 (JFK).

United States District Court, S.D. New York.

Nov. 10, 1986.

Dweck & Sladkus, New York City (Michael H. Aranoff, Jack S. Dweck, of counsel), for plaintiff.

L'Abbate & Balkan, Garden City, N.Y. (Anthony P. Colavita, Robert A. Rosenfeld, of counsel), for defendant Morris, Manning & Martin.

## MEMORANDUM OPINION and ORDER

KEENAN, District Judge:

This is a legal malpractice action brought by a New York resident against a Georgia partnership engaging in the practice of law and two persons associated with the firm individually. Jurisdiction is predicated on the diversity of citizenship of the parties. The defendant partnership now moves the Court for an order pursuant to Fed.R. Civ.P. 12(b)(2) dismissing the complaint against it for lack of personal jurisdiction. For the reasons stated below, the Court grants defendant's motion.

### Background

Plaintiff Harvey M. Smith (hereinafter "Smith") alleges in his complaint that he is a resident of New York City. Complaint para. 1. Defendant Morris, Manning & Martin (hereinafter "Morris Manning"), sued herein as "Morris & Manning," is a partnership consisting of attorneys licensed to practice law in the State of Georgia. Affidavit of Nicholas N. Sears para. 2. Its sole office is located in Atlanta, Georgia and it has no agents for the transaction of business in New York. *Id.* Nicholas Sears, a partner in Morris Manning, and James Altenbach, associated with the firm, are named individually in the complaint. The parties have stipulated that the motion of Morris Manning to dismiss the complaint for lack of personal jurisdiction shall be deemed to include the individual defendants as if made on their behalf.

Smith alleges that he retained Morris Manning on or about April 28, 1980 for the purposes of obtaining tax and estate planning advice. Complaint para. 7. Messrs. Altenbach and Sears were placed in charge of providing these services to Smith. *Id.* Smith alleges that the defendants advised him as part of this service to place a building in New York owned by him under the ownership of a corporation in order to save money on his taxes. *Id.* para. 10. Smith complains that he did so, only to learn later that it would cost him an additional $259,-000 in income taxes, plus approximately $20,000 in legal and filing fees. *Id.* paras. 11–12. He also asserts that he had to make charitable contributions of $260,000 in value in order to off-set his otherwise increased tax liability. *Id.* Smith alleges

that Morris Manning and the individual defendants failed to use reasonable skill and diligence in giving him legal advice and asserts claims for negligence and breach of contract. *See id.* paras. 13–20.

In support of its motion to dismiss the complaint against the law firm, Morris Manning submits an affidavit of Nicholas Sears (hereinafter "Sears"). Sears states in his affidavit that Smith came to Atlanta, Georgia in April, 1980 to solicit the advice of Morris Manning with regard to the planning of his estate. Sears Affidavit para. 3. As part of its services, Morris Manning prepared an irrevocable trust at Smith's request in which it was recited that Smith was "of the city of Buford, state of South Carolina." *Id.* Sears asserts that he believed that to be true. *Id.*

All of the services performed by Morris Manning for Smith were performed in Georgia, according to Sears. *Id.* para. 4. No member or associate of the firm was ever present in New York in connection with Smith's retention of Morris Manning. *Id.* Because Smith had as an asset of his estate a building located in New York, Morris Manning suggested that he retain counsel in New York, which he did. *Id.* para. 5. Thereafter, Morris Manning contacted Smith's New York counsel by telephone on several occasions. Also, on a few occasions Morris Manning made telephone calls to Smith in New York, who had informed the firm that he would be staying there. *Id.*

Smith admits that he resided outside of New York at the time he retained Morris Manning, but has resided within the State since 1980, paying New York City and New York State income taxes. Affidavit of Harvey M. Smith para. 2. Morris Manning knew of his residence there, Smith asserts, as evidenced by numerous items of correspondence addressed by the firm to him in New York. *Id.* para. 4. Morris Manning drafted a will, which was never executed, wherein it is recited that Smith is a citizen of New York. *Id.* para. 11. Part of the services performed by Morris Manning was the preparation of documents to be filed within the State of New York, *id.* para. 5, and some of Morris and Manning's legal fees were paid by Smith while he resided in New York, *id.* para. 3.

**Discussion**

■ The issue of personal jurisdiction in cases brought within the diversity jurisdiction of federal courts is determined by the law of the state in which the federal court sits. *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir. 1963). The burden of proving that the Court has jurisdiction over a defendant lies with the plaintiff, who must make only a prima facie showing of jurisdiction at this stage in the proceedings. *Marine Midland Bank v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981).

■ Smith asserts that jurisdiction over Morris Manning exists by virtue of New York's long-arm statute, C.P.L.R. § 302(a)(1), (3) and (4). Under § 302(a)(1), "a court may exercise personal jurisdiction over any nondomiciliary ... who ... transacts any business within the state or contracts anywhere to provide goods or services in the state," when the cause of action asserted against the defendant arises out of those acts. Smith has not alleged any facts indicating that Morris Manning transacted business within the state. Morris Manning performed all of its services for Smith in Georgia, leaving those services to be performed within New York to Smith's local counsel. The agreement under which Smith retained Morris Manning was entered into while he resided in South Carolina, and no one from the firm has ever been present within this state in connection with the firm's services for Smith. Under these facts, the Court concludes that the requirements of C.P.L.R. § 302(a)(1) are not satisfied.

■ C.P.L.R. § 302(a)(3) provides for personal jurisdiction over a nondomiciliary who "commits a tortious act without the state causing injury to person or property within the state" under certain circumstances. The location of a non-physical pecuniary injury for jurisdictional purposes

is not determined by merely looking to the state in which the plaintiff resides. *Sybron Corp. v. Wetzel,* 46 N.Y.2d 197, 205, 413 N.Y.S.2d 127, 131, 385 N.E.2d 1055, 1058 (1978); *Fantis Foods, Inc. v. Standard Importing Co.,* 49 N.Y.2d 317, 326–27, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980). Smith's alleged increased tax liability may be manifested wherever he resides. To construe the long-arm statute as placing the situs of the injury in whatever state Smith chooses to make his residence would subject the defendants to jurisdiction in forums the laws of which they never purposefully availed themselves, a construction of the statute barred by *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). *See Trafalgar Capital Corp. v. Oil Producers Equip. Corp.,* 555 F.Supp. 305 (S.D.N.Y.1983); *Martinez v. American Standard,* 91 A.D.2d 652, 457 N.Y.S.2d 97, 98–99 (2d Dep't 1982). In such a situation, the situs of the injury must be where "the critical events associated with the dispute took place." *American Eutectic Welding Alloy Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir.1971) (quoting *Spectacular Promotions, Inc. v. Radio Station Wing,* 272 F.Supp. 734, 737 (E.D.N.Y.1967)); *Faherty v. Fender,* 572 F.Supp. 142, 149 (S.D.N.Y. 1983); *Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, P.A.,* 85 A.D.2d 861, 446 N.Y.S.2d 447, 449 (3d Dep't 1981). In the instant case the critical events occurred in Georgia and the injury, therefore, did not occur within New York.

■ Even supposing an injury to have occurred within New York, Smith has not met his burden with regard to the other conditions set out by C.P.L.R. § 302(a)(3). The complaint does not sufficiently allege, and the Court is convinced that the underlying facts do not establish, that Morris Manning "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from services rendered, in the state or . . . from interstate or international commerce." Smith contends that Man-

ning's corresponding with him in New York by telephone and letters is sufficient to constitute "persistent conduct" in the state and that the fees he paid to the firm from New York are substantial revenues, derived from services rendered in the state or from interstate commerce. The Court disagrees. The firm's correspondence with Smith does not amount to conduct within the state. Moreover, Smith "has neither alleged net or gross profits [derived by Morris Manning from interstate commerce] . . . nor asserted that discovery in this area is necessary." *Hansa Marine Ins. Co. v. Ocean Tramping Co.,* 580 F.Supp. 1532, 1536 n. 9 (S.D.N.Y.1984). The Court concludes that no personal jurisdiction exists over Morris Manning by virtue of C.P.L.R. § 302(a)(3).

■ Smith's final argument under the long-arm statute is singularly unconvincing. He asserts that the cause of action alleged in the complaint arises from the ownership of real property situated in New York and therefore falls within C.P.L.R. § 302(a)(4). To create jurisdiction over a defendant under that provision, however, the cause of action must arise from the ownership, possession or use of real property by the defendant. Because the property belongs to Smith rather than to Morris Manning, no jurisdiction can be asserted over Morris Manning under this section of the long-arm statute.

### Conclusion

For the foregoing reasons, the motion of Morris Manning to dismiss the complaint against it is granted. In accordance with the stipulation of the parties, the complaint is also dismissed as to the individual defendants.

SO ORDERED.