**CALVIN KLEIN INDUSTRIES, INC., et al., Plaintiffs,**

**v.**

**BFK HONG KONG, LTD. and James Langford, Defendants.**

**No. 89 Civ. 0980(RO).**

United States District Court,
S.D. New York.

May 16, 1989.

John Nachazel, New York City, for plaintiffs.

Julius Rabinowitz, Kuhn and Muller, New York City, for defendants.

### OPINION AND ORDER

OWEN, District Judge:

In this trademark case, Calvin Klein Industries, Inc. ("Calvin Klein") seeks a preliminary injunction restraining the distribution or sale of sportswear bearing the Calvin Klein label. Calvin Klein entered into a manufacturing contract with defendants BFK Hong Kong, Ltd. and its director, James Langford, but after several delays in delivery, Calvin Klein refused to accept

the merchandise, citing tardiness and deviation from other manufacturing requirements. As a result, the garments remain in Pakistan, and Calvin Klein seeks an injunction prohibiting defendants from trying to sell them independently.

■ After an evidentiary hearing, I conclude that Calvin Klein is entitled to a preliminary injunction. It has shown a substantial likelihood of success on the merits, a threat of irreparable injury in the absence of an injunction, and a balance of hardships tipping decidedly in its favor. *See Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). At this point, the goods bear the Calvin Klein label without authorization, and any sale necessarily would result in consumer confusion as to their genuineness. The Lanham Act, 15 U.S.C. § 1114 et seq., protects against just such unauthorized use of a mark and resultant consumer confusion. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 631 F.Supp. 735, 740 (S.D.N.Y.1985), *aff'd*, 799 F.2d 867, 871 (2d Cir.1986). Thus, from what is before me, Calvin Klein would probably succeed on the merits of an infringement action under the Lanham Act in the event that defendants sold the infringing garments.

I am also sufficiently convinced that sales of the infringing goods would cause irreparable injury to plaintiff's good will and reputation for quality manufacture, in part because the goods were manufactured in Pakistan instead of in England, as provided for under the contract, with an apparent loss of quality control flowing therefrom. Finally, the balance of hardships favor plaintiff, because defendant's apparent breach of contract precipitated the entire dispute.[1] Under these circumstances, the injunction may issue. *See El Greco Leather Products Co. v. Shoe World*, 806 F.2d 392 (2d Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 71, 98 L.Ed.2d 34 (1988).

■ The only remaining issue, therefore, pertains to the necessary scope of the injunction, specifically, whether, having found plaintiff entitled to a preliminary injunction on sales in the United States, this court also may enjoin sale of these garments abroad. The Lanham Act ordinarily supports injunctions only against sales in the United States, where the trademark is registered. However, the law may reach abroad, and apply extraterritorially, under certain circumstances. *Steele v. Bulova Watch Co., Inc.*, 344 U.S. 280, 289, 73 S.Ct. 252, 257, 97 L.Ed. 319 (1952). In *Bulova*, the Supreme Court applied the Lanham Act to bar the defendant from selling infringing watches in Mexico, because the sales had an effect on United States commerce and because certain acts relating to the manufacture of the watches had occurred in the United States. *Id.* at 286–87, 73 S.Ct. at 255–56. Finding that Congress intended to make the Lanham Act's reach coextensive with the Commerce Clause, *Bulova* holds that under the statute "a United States District Court has jurisdiction to award relief to an American corporation against acts of infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States." 344 U.S. at 281, 73 S.Ct. at 253.

In determining whether such relief is appropriate, however, the following factors are to be considered: 1) whether defendant's conduct has a substantial effect on United States commerce; 2) whether the defendant is a United States citizen; and 3) whether extraterritorial enforcement of the trademark will encroach upon foreign trademark rights. *Vanity Fair Mills v. T. Eaton. Co.*, 234 F.2d 633 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76, *reh'g denied*, 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956). Although the absence of any one factor is not dispositive, *see American Rice, Inc. v. Arkansas Rice Growers*, 701 F.2d 408 (5th Cir.1983) (citing *Vanity Fair*, 234 F.2d 633); *C–Cure*

---

**1.** In this regard, I find credible the testimony of Robert G. Mazzoli, Vice President of Merchandising for Calvin Klein Sport for Men, who explained that Calvin Klein justifiably refused the goods after having given defendants every opportunity to perform.

*Chemical Co., Inc. v. Secure Adhesives Corp.*, 571 F.Supp. 808, 821 (S.D.N.Y.1983), the Lanham Act will not support an injunction against "acts committed by a foreign national in his home country under a presumable valid trademark registration in that country." *American White Cross Laboratories, Inc. v. H.M. Cote, Inc.*, 556 F.Supp. 753, 757 (S.D.N.Y.1983) (quoting *Vanity Fair*, 234 F.2d at 642).

Consideration of the relevant factors supports the issuance of an extraterritorial injunction in this case. There is no dispute that defendant possesses no rights under foreign law with which an injunction against it might conflict. Although defendant Langford is not a United States citizen, the evidence indicates that he resides in New York, and is the controlling force behind BFK, a New York corporation. Therefore, both Langford and BFK may be treated as United States citizens for the purpose of this discussion. *See A.T. Cross Co. v. Sunil Trading Corp.*, 467 F.Supp. 47, 50 n. 5 (S.D.N.Y.1979). The absence of any potential conflict with foreign trademark rights, and the United States citizenship or constructive citizenship of the defendants distinguishes this case from those in which the requested relief had been denied. *Cf. Vanity Fair*, 234 F.2d at 642; *C-Cure Chemical Co.*, 571 F.Supp. at 821; *American White Cross*, 556 F.Supp. 757–58.

The final factor for consideration—the effect of foreign, infringing sales on United States commerce—also supports Calvin Klein's application for a preliminary injunction. Effects on domestic commerce may include certain harms to plaintiff, as a domestic corporation, such as diversion of sales, *American Rice, Inc.*, 701 F.2d at 414–415, or harm to licensees, *Playboy Enterprises v. Chuckleberry Pub, Inc.*, 511 F.Supp. 486, 495 (S.D.N.Y.1981). In addition, a substantial effect on commerce may be found where the defendant's activities are supported by or related to conduct in United States commerce. In *Bulova*, for example, diversion of sales to consumers, who could find cheap, imitation watches just over the Mexican border, as well as the defendant's purchase of component parts in

the United States, constituted sufficient effects on commerce. 344 U.S. at 286, 73 S.Ct. at 255.

Calvin Klein is entitled to injunctive relief against infringing sales where such sales would divert Calvin Klein's sales, or would harm licensees. Because the garments at issue were manufactured under a contract made in New York, for delivery to New York, the remedies for breach of that contract necessarily have some effect on commerce. Calvin Klein claims that, because of its worldwide advertising and use of authorized licensees, any sale of the garments will irreparably damage Calvin Klein directly, by undermining Calvin Klein's good will and reputation for quality manufacture, or indirectly, by depriving Calvin Klein licensees of their exclusive rights. Such injuries would have a substantial effect on United States commerce, and, therefore, are enjoinable under the Lanham Act.

Accordingly, defendants are preliminarily enjoined from selling the infringing goods in the United States, and in such other markets as Calvin Klein may demonstrate that it has established its presence, through either direct sales or licensees. Additionally, defendants must make reasonable efforts to ensure that those to whom they sell the goods do not resell or otherwise introduce the goods into territories in which Calvin Klein has a presence, as described above.

An order shall be submitted carrying the foregoing into effect. If the parties are unable to agree on its terms, I will hear argument on disputed areas on June 2, 1989 at 2:15 in Courtroom 128.