19-0287 (L)
*Red Hook Container Terminal v. South Pacific Shipping Co. Ltd*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### AMENDED SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of December, two thousand twenty-one.

PRESENT:
> ROBERT D. SACK,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> *Circuit Judges.*

―――――――――――――――――――――――――――

Red Hook Container Terminal, LLC,

> *Plaintiff-Counter-Defendant-*
> *Appellant-Cross-Appellee,*

v.

South Pacific Shipping Co. Ltd.,
Ecuadorian Line, Inc.,

> *Defendants-Counter-*
> *Claimants-Appellees-*
> *Cross-Appellants.*

―――――――――――――――――――――――――――

19-0287 (L)
19-3185 (XAP)

**For Appellant-Cross-Appellee:** JOHN R. KEOUGH, (Laura Lynn Gongaware, *on the brief*), Clyde & Co US LLP, New York, NY.

**For Appellees-Cross-Appellants:** ROBERT ANTHONY SUAREZ, Ropers, Majeski, Kohn & Bentley, New York, NY.*

Appeal from the United States District Court for the Southern District of New York (Alison J. Nathan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED in part and REVERSED and REMANDED in part**.

Plaintiff and Crossclaim-Defendant Red Hook Container Terminal, LLC ("Red Hook") contracted to provide stevedoring and other marine terminal services for Defendants and Crossclaim-Plaintiffs South Pacific Shipping Co. and Ecuadorian Line, Inc. (collectively "South Pacific"). The parties had a falling out, ended their business relationship, and sued each other. Following a bench trial, the district court (Nathan, *J.*) entered a judgment rejecting Red Hook's claims for breach of contract and storage fees pursuant to the New York Terminal Conference

---

*After oral argument, Mr. Suarez filed a notice of appearance indicating that he had replaced Daniel F. Paige as counsel of record.

Tariff, and awarding damages on South Pacific's conversion claim. Red Hook

now appeals from that judgment, and South Pacific cross appeals arguing that the

district court's damages award on its conversion claim was insufficient. We

assume the parties' familiarity with the underlying facts, procedural history, and

issues on appeal.

## I. Standard of Review

"A district court's findings of fact following a bench trial will be set aside on

appeal only if those findings are clearly erroneous." *LoPresti v. Terwilliger*, 126

F.3d 34, 39 (2d Cir. 1997). But the court's conclusions of law, including questions

of contract interpretation and the measure of damages, are subject to de novo

review. *Id.*; *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009) (contract

interpretation); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)

(damages).

## II. Discussion

### A. Contract Termination Fee

Addendum H of the parties' five-year contract divides the contract by year

and establishes a specific fee that a party must pay if it "exercises the option not to

renew" the contract "[n]inety days prior to [the] expiration" of any given contract

year.   App'x at 417.   Red Hook argues that Addendum H requires South Pacific to pay the contract's Year 4 fee of $80,000 for terminating the parties' contract in that year, or alternatively, pay the Year 5 fee of $40,000 for failing to renew the contract for that year.   Though we agree with the district court that the contract's non-renewal provision does not entitle Red Hook to an $80,000 fee, we conclude that South Pacific *is* liable for the $40,000 non-renewal fee set forth in Addendum H.

Under federal law, maritime contracts like this one "must be construed like any other contracts" – that is, "by their terms and consistent with the intent of the parties."   *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004).   Here, the contract does not require South Pacific to pay a fee of $80,000.   It instead lists a different fee for each year, with a particular year's fee applying when a party "exercises the option not to renew" the contract for that year.   Opting not to renew the contract ninety days before the contract's fifth year would thus trigger the $40,000 Year 5 penalty.

Red Hook's contention that Addendum H requires South Pacific to pay the $80,000 Year 4 fee rests principally on the fact that Addendum H includes a fee for Year 1.   According to Red Hook, it would make no sense for the parties to include

4

a non-renewal fee for Year 1, since a party could not be penalized for failing to renew the contract before it existed.

But while "an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable," *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 558 (2d Cir. 2000), "we are not free to alter the plain terms of an agreement." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003). And though Addendum H's listing of a non-renewal fee for Year 1 is, at first glance, curious, we cannot say based on the record developed at trial that the parties' inclusion of a Year 1 non-renewal fee was inescapably nonsensical or useless. As the district court observed, "the parties' Agreement was a continuation of a contractual relationship between South Pacific . . . and Red Hook's predecessor." Sp. App'x at 22. Indeed, Addendum H states that Red Hook's predecessor would pay a penalty if Red Hook opted not to renew the contract, which likewise suggests that "the Year 1 penalty in Addendum H could refer to the decision not to renew the pre-existing agreement" between South Pacific and Red Hook's predecessor. *Id.* Accordingly, the inclusion of a fee for

Year 1 is not wholly inconsistent with the plain meaning of the language contained in Addendum H, and the plain terms of the contract control.

That said, we do agree with Red Hook that South Pacific's decision to opt out of the contract for its fifth year rendered it liable for the Year 5 penalty of $40,000.[2] South Pacific indefinitely ceased all commercial dealings with Red Hook in the contract's fourth year, when South Pacific discontinued service to Red Hook's terminal, re-routed its ships from New York to Antwerp, sought to retrieve its equipment from Red Hook's terminal, and, in response to Red Hook's inquiries, informed Red Hook that their relationship was "done." *Id.* at 10. South Pacific unmistakably opted not to renew the contract, "[n]inety days prior to [the] expiration" of Year Four, which makes South Pacific liable to Red Hook for $40,000.

---

[2] In reaching this conclusion, we are quick to note that the parties have presented something of a moving target on this issue. South Pacific revised its position about the meaning of Addendum H, initially arguing that *it* was entitled to an early termination fee and then ultimately reversing course to contend that Addendum H does not provide for early termination. And from the time Red Hook billed South Pacific until its post-trial briefing, Red Hook claimed that South Pacific owed it $80,000 for terminating the contract in Year 4 – as opposed to $40,000 for declining to renew the contract for Year 5. Only on appeal has Red Hook clearly argued, in the alternative, that it was entitled to $40,000 based on the contract's non-renewal provision. We nevertheless "retain broad discretion" to decide even unpreserved issues, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 103 (2d Cir. 2004), and reach them here in part because South Pacific has itself failed to argue that Red Hook forfeited its new argument, *see Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

## B. Conversion of Property

Red Hook next challenges the district court's finding that it converted South Pacific's equipment by refusing to return it. Under New York law, conversion is defined as the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *New York v. Seventh Regiment Fund*, 98 N.Y.2d 249, 259 (2002) (internal quotation marks omitted). To prevail on a conversion claim, a plaintiff must prove that (1) a defendant has "acted without authorization," (2) the defendant "exercised dominion or a right of ownership over property belonging to another," (3) "the rightful owner [made] a demand for the property," and (4) "the demand for the return [was] refused." *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 514 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006). On appeal, Red Hook mainly contends that its imposition of a terminal hold on South Pacific's property was not "unauthorized" because it was entitled to confiscate South Pacific's equipment until South Pacific paid stevedoring and storage fees that had accrued before the parties' contract was terminated. But the contract nowhere permitted the parties to seize each other's property in the event of a breach.

Indeed, Red Hook does not argue otherwise. Instead, Red Hook relies on the New York Terminal Conference Tariff – which it contends went into effect once the parties' agreement ended – to justify the seizure of South Pacific's property until all outstanding fees were paid.

The Tariff is a public schedule setting rates for participating terminal operators that, under federal law, can be "enforceable . . . as an implied contract." 46 U.S.C. § 40501(f). But the Tariff's terms are not enforceable when the "marine terminal operator has an actual contract with a party covering the services rendered by the marine terminal operator to that party." 46 C.F.R. § 525.2(a)(3). Here, there is no dispute that the parties had a contract that operated until at least November 22, 2013. Accordingly, the Tariff cannot justify Red Hook's imposition of a terminal hold on South Pacific's property as security for bills that accrued prior to that date. Red Hook's seizure of South Pacific's equipment was therefore unauthorized. And since the record is clear that Red Hook exercised dominion over the property, that South Pacific made a demand for its return, and that Red Hook refused, the district court properly concluded that Red Hook converted

South Pacific's property. *See Soroof Trading Dev. Co.,* 842 F. Supp. 2d at 514; *Colavito,* 8 N.Y.3d at 50.[3]

## C.    Storage Fees

Red Hook further argues that the district court erred by denying its claim for storage fees under the Tariff.   But as explained above, the Tariff did not cover storage services provided before the parties' contract was terminated.   Nor do we see any basis for concluding that Red Hook is entitled to fees for holding South Pacific's equipment *after* the contract's termination.   It would be strange indeed to conclude that South Pacific owed such fees when Red Hook confiscated the equipment and refused to return it, notwithstanding South Pacific's express – and repeated – demands for the property.   Clearly, any damages incurred by Red Hook in this regard were purely self-inflicted.   *Cf. U.S. Bank Nat. Ass'n v. Ables & Hall Builders,* 696 F. Supp. 2d 428, 440–41 (S.D.N.Y. 2010) ("In a breach of contract action, a plaintiff ordinarily has a duty to mitigate the damages that he incurs.   If the plaintiff fails to mitigate his damages, the defendant cannot be charged with them.").

---

[3] To the extent that the Tariff went into effect after South Pacific terminated the agreement, Red Hook would still be liable to South Pacific for conversion because it exceeded its authority under the Tariff by demanding fees to which it was not entitled.

9

**D.     South Pacific's Cross-Appeal on Damages**

Finally, South Pacific cross appeals on damages, contending that the district court's award of the full value of the converted equipment was insufficient and should also have included the amount of money that South Pacific paid to lease the equipment from the time the equipment was converted until December 2016. We disagree.

For starters, "[t]he usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980). Lost profits "are generally disallowed." *Id.* If Red Hook had not converted the equipment when it did, South Pacific could have retrieved it and returned it to the lessor, thereby avoiding further lease payments, or retained it and continued using it at other ports to generate revenue and cover the costs of leasing. As the district court put it, South Pacific's "harm could be understood either as the loss of possession or as the lease fees, but not both at once." Sp. App'x at 51. So compensating the company "for both the loss of possession and the resulting lease payments would constitute double recovery." *Id.* By awarding South Pacific damages in the amount the equipment was worth, the court opted for the "usual measure of damages for

conversion," *Fantis Foods*, 49 N.Y.2d at 326, which also happened to be a few thousand dollars more than what South Pacific paid to rent the equipment during the relevant time.[4]   That was enough to make South Pacific whole – or more than whole – for Red Hook's unlawful conversion.

### III.   Conclusion

We have considered the parties' remaining arguments, and we find them to be meritless.   Accordingly, we **REVERSE** and **REMAND** on the issue of Red Hook's entitlement to a fee in light of South Pacific's non-renewal of the parties' contract, but otherwise **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Red Hook does not argue that the proper award should have been the value of the lease, even though the leasehold is the property interest in which Red Hook interfered.   We therefore do not pass on that issue.   *See Norton*, 145 F.3d at 117.

11