Raymond LEMME, Individually and as assignee of certain rights of Wine Imports of America, Ltd., a New York Corporation, Plaintiff,

v.

WINE OF JAPAN IMPORT, INC. and Konishi Brewing Co., Ltd., Defendants.

No. 84 CV 2362.

United States District Court, E.D. New York.

March 28, 1986.

Epstein, Becker, Borsody & Green, P.C., New York City, for plaintiff.

Wender, Murase & White, New York City, Konishi Brewing Co., Douglas A. Danzig, for defendants.

MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is a motion by defendant Konishi Brewing Co., Ltd. ("Konishi"), a Japanese corporation with its principal place of business in Japan, to dismiss plaintiff's complaint for lack of personal jurisdiction, insufficiency of process and insufficient service of process. Fed.R.Civ.P. 12(b)(2), (4), (5). Although a default judgment against Konishi has been noted, no one has questioned the propriety of defendant's motion, and both parties have briefed the personal jurisdiction issue. The Court will therefore treat defendant's motion as one for relief from a default judgment as well as for dismissal. Fed.R.Civ.P. 60(b)(4). For the reasons developed below, Konishi's motion is denied.

*Facts*

Plaintiff brought this diversity action against Konishi and Wine of Japan Import, Inc. ("Wine of Japan") for damages caused by defendants' alleged breach of a June 16, 1975 agreement (the "Agreement") between Wine of Japan and Wine Imports of America, Ltd. ("Wine Imports"). Wine Imports was a New York corporation of which plaintiff, a New Jersey citizen, was an officer and director. Wine of Japan is a New York corporation.

Under the Agreement, Wine Imports would purchase certain wine products for distribution in the United States. All sales were to be made f.o.b. Japan. In addition, the Agreement contained a clause providing for consent to jurisdiction in New York.

On August 4, 1975, Konishi, a major shareholder of Wine of Japan, lent its credit to the deal by guaranteeing "the performance of each and every term and condition of [the Agreement] as if said obligations, representations and warranties were of and made by it, or the conditions and terms of said Agreement were to be performed and [sic] by it."[1] Konishi signed this agreement in Japan.

Konishi is a Japanese corporation with its principal place of business in Japan. It is not licensed to do business in New York. Konishi maintains no offices, employees or bank accounts in New York, owns no property here, and never solicits business or advertises its products in this state. Its only tangible contact with New York is that it sends a representative to an annual wine wholesalers' trade show here.

Konishi shares no common directors or officers with Wine of Japan, but it does

1. The guaranty is poorly translated. It is signed by the president of Konishi and states "We ... guarantee the obligations ... [of] Wine of Japan ... as if said obligations ... were ... to be performed by *it*" (emphasis added). Read literally, the provision would be meaningless. The only reasonable interpretation is that the parties intended to say "as if [those obligations] were ... to be performed by *us*."

own twenty-seven percent of Wine of Japan's stock. Konishi sells all its products to Crown Trading Co., Ltd. ("Crown Trading"), a Japanese corporation, which in turn exports the products to the United States. Konishi owns none of the stock of Crown Trading and exports no products to the United States itself.

*Discussion*

1. *Lack of a Basis for Personal Jurisdiction*

Upon a motion to dismiss for lack of personal jurisdiction, a district court may rely on the affidavits, permit discovery in aid of the motion, or conduct an evidentiary hearing. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). Upon analysis it is clear that the jurisdictional issue in this case [2] may be resolved by examination of the pleadings and affidavits alone.

a. *Jurisdiction Under C.P.L.R. § 302(a)(1)*

In the first of his three theories, plaintiff argues that this Court has jurisdiction over Konishi under New York C.P.L.R. § 302(a)(1). Section 302(a) permits a court to assert jurisdiction over a non-domiciliary who "in person or through an agent (1) transacts any business within the state or contracts anywhere to supply goods or services in the state....," provided plaintiff's claim arises out of the transaction or contract. Plaintiff argues that when Konishi signed the guaranty, it "contract[ed] ... to supply goods or services in the state."

Plaintiff relies on *Culp & Evans v. White,* 524 F.Supp. 81 (W.D.N.Y.1981). In that case the Court sustained personal jurisdiction on the basis of the "contracts anywhere" clause of section 302(a)(1) over a non-domiciliary who had signed guaranties for a construction contract that was to be performed in New York. *Id.* at 82–83; *accord Chemco International Leasing, Inc. v. Meridian Engineering, Inc.,* 590 F.Supp. 539, 542–44 (S.D.N.Y.1984). Here, however, the contract Konishi guaranteed was to be performed in Japan. When a foreign corporation sells goods f.o.b. out-of-state, it does not, under section 302(a)(1), perform its contract in New York. *Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583, 588–89 (2d Cir.1965). Because Wine of Japan was to perform its contract in Japan, no personal jurisdiction exists over Konishi on the basis of the "contracts anywhere" clause of section 302(a)(1).

b. *Jurisdiction Based on Agency*

In the second of his arguments, plaintiff asserts that Konishi is doing business in New York through its agent [3] Wine of Japan, and is thus subject to jurisdiction under C.P.L.R. § 301. To find jurisdiction based on agency, plaintiff must establish that Wine of Japan "acted in this state for the benefit of and with the knowledge and consent of [Konishi] and [Konishi] must exercise some element of control over [Wine of Japan]." *Louis Marx & Co. v. Fuji Seiko Co.,* 453 F.Supp. 385, 390 (S.D.N.Y.1978); *see Selman v. Harvard Medical School,* 494 F.Supp. 603, 611 (S.D.N.Y.), *aff'd without opinion,* 636 F.2d 1204 (2d Cir.1980).

Construing plaintiff's papers in the light most favorable to him,[4] he has

2. Because this is a diversity action, state law—in this case that of New York—governs the issue of personal jurisdiction. *See Braman v. Mary Hitchcock Mem. Hospital,* 631 F.2d 6, 7 (2d Cir. 1980); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 225–26 (2d Cir.1963).

3. It has been said that the term "agent" has a broader meaning in the jurisdictional sense than when used in a common law context. *See Merkel Associates, Inc. v. Bellofram Corp.,* 437 F.Supp. 612, 617 n. 2 (W.D.N.Y.1977).

4. While the burden is ultimately on the plaintiff to prove by a preponderance of the evidence that the court has personal jurisdiction over the defendant, when no evidentiary hearing is held on a motion to dismiss for lack of jurisdiction, the court must view the pleadings and affidavits in the light most favorable to the plaintiff. *See Guardino v. American Savings & Loan Ass'n of Florida,* 593 F.Supp. 691, 694 (E.D.N.Y.1984); *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa,* 428 F.Supp. 1237, 1241 (S.D.N.Y.1977).

alleged the following: that Konishi is a twenty-seven percent shareholder in Wine of Japan; that Konishi knew that plaintiff would be contracting with Wine of Japan; that plaintiff, on a trip to Japan as Wine of Japan's guest, met with Konishi officials; that Konishi and Wine of Japan used a similar trademark on their stationery; and that plaintiff negotiated with a Wine of Japan representative to obtain the Konishi guaranty. These facts, however, do not make Wine of Japan Konishi's agent.

An inference of agency may be warranted when a foreign corporation and another corporate entity doing business in the state are commonly owned, *see Furman v. General Dynamics Corp.*, 377 F.Supp. 37, 43 (S.D.N.Y.1974); *Delagi v. Volkswagenwerk AG of Wolfsburg Germany*, 29 N.Y.2d 426, 431, 328 N.Y.S.2d 653, 656, 278 N.E.2d 895, 897 (1972); Restatement (Second) of Agency § 14M, but that is not the case here. The crucial issues are whether the foreign corporation controls the New York corporation, *id.*, and whether the two corporations agree that the latter is acting primarily for the foreign corporation's benefit, *id.* § 14L.

Plaintiff argues that Wine of Japan became Konishi's agent when the plaintiff insisted to a Wine of Japan representative that Konishi guarantee Wine of Japan's performance. The mere communication to Konishi of plaintiff's request for the guaranty, however, does not establish that Wine of Japan was acting as Konishi's agent. Nothing in plaintiff's allegations demonstrates that Konishi exercised any control over Wine of Japan—let alone an amount sufficient to make Wine of Japan its agent—or that Wine of Japan acted primarily for Konishi's benefit. Analytically, plaintiff's argument is that in a suretyship relationship the principal obligor is the agent of the surety for jurisdictional purposes. No authority is cited for this startling proposition, and I decline to adopt it.

Nor has plaintiff established an apparent agency relationship between the two defendants. Plaintiff has adduced no facts to show that Konishi has at any time manifested to him or the community at large that Wine of Japan is its agent. Nor is there any evidence that Konishi ratified the acts of Wine of Japan or in any other way acted in a manner that would make it liable as a principal.

In sum, plaintiff has shown only that Wine of Japan sold products originally distributed by Konishi in Japan, that Konishi knew of the Agreement between Wine of Japan and plaintiff, and that Konishi guaranteed it. This is simply not enough to establish an agency.

c. *Consent to Jurisdiction*

Plaintiff's final theory is that Konishi consented to jurisdiction in this Court by signing the guaranty. Its argument is straightforward: because the underlying contract (between plaintiff and Wine of Japan) contains a consent-to-jurisdiction clause, the guarantor must "perform" that term by submitting to jurisdiction in this forum. Konishi responds that a non-domiciliary guarantor does not become amenable to suit in a forum just because the principal obligor consented to jurisdiction in the underlying contract.

Where C guarantees that B will perform his contract with A, jurisdiction over B does not carry with it jurisdiction over C. Plaintiff must establish a basis of jurisdiction over each defendant. Consent, of course, is a well established basis of personal jurisdiction,[5] and plaintiff argues that

5. The Supreme Court has recently noted that because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703, 102 S.Ct. 2099, 2105 [72 L.Ed.2d. 492] (1982). For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. *See National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Where such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and

this is precisely what we have here: Konishi guaranteed

> the obligations, representations and warranties made by Wine of Japan Import, Inc. including the performance of each and every term and condition of an Agreement dated June 16, 1975 as if said obligations, representations, and warranties were of and made by it, or the conditions and terms of said Agreement were to be performed and [sic] by it.

Konishi undertook to guarantee more than simply the delivery of the products ordered by plaintiff; it adopted as its own each and every term and condition of the Agreement. This emphatic expression of intent to assume every obligation under the contract necessarily included the consent-to-jurisdiction clause. To interpret this clause narrowly by giving it the most niggardly reading possible is neither good jurisprudence nor good economics. *See Export Ins. Co. v. Mitsui S.S. Co.,* 26 A.D.2d 436, 437–38, 274 N.Y.S.2d 977, 980 (1st Dep't 1966).

Konishi relies on *Pal Pools, Inc. v. Billiot Bros., Inc.,* 57 A.D.2d 891, 394 N.Y.S.2d 280, 281 (2d Dep't 1977), for the proposition that a guarantor cannot be deemed to have consented to jurisdiction merely because the underlying agreement it guarantees contains a consent-to-jurisdiction clause. There, as here, the underlying contract contained a jurisdictional consent clause. There, however, the guaranty agreement contained only a choice of law provision. Thus, it was reasonable to conclude that the parties had carefully distinguished between the two documents, intending only that the guarantors be governed by the substantive law of New York, not that they be subject to its jurisdiction as well.

Here, by contrast, there is no indication that the parties intended any such distinction. Indeed, the guarantee virtually incorporates the contract by reference. In such a situation, the only reasonable interpretation is that the consent-to-jurisdiction clause was meant to bind both Wine of Japan and Konishi.

Similarly, in *General Electric Credit Corp. v. Toups,* No. 85 CV 1740 (S.D.N.Y. Aug. 13, 1985) [Available on WESTLAW, DCTU database] (available on LEXIS, Genfed library, Dist. file), a loan agreement and certain corporate guarantees contained consent clauses, but there was no mention of jurisdiction in the assumption agreements on which plaintiff was attempting to sue. Because the assumption agreements mentioned only selected provisions of the loan agreements, the court concluded that the parties did not intend the consent-to-jurisdiction clause to be assumed. The court indicated, however, that the result might be different if the assumption agreement incorporated by reference a document containing a consent-to-jurisdiction clause. That is precisely the situation here.

Purely as a matter of economics, it is "only realistic to assume that the guarantee [was an] important inducement," *Panos Inv. Co. v. District Court,* 662 P.2d 180, 183 (Colo.1983), for Wine Imports to do business with Wine of Japan. The first draft of the original contract between Wine Imports and Wine of Japan actually included Konishi as a party to the contract (Affidavit of Raymond Lemme ("Lemme Aff.") ¶ 2, at 2). Plaintiff agreed to Wine of Japan's request that Konishi be omitted, but "insisted ... that Konishi provide [Wine Imports] with a full and unrestricted guarantee of each and every term of [the] Agreement with Wine of Japan" (Lemme Aff. ¶ 2 at 2).

In these circumstances Konishi could "reasonably anticipate being hauled into court [in New York]," *Worldwide Volkswagon v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980), and it would be unfair to allow it now to evade jurisdiction here.

unjust," *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), their enforcement does not offend the process. *Burger King Corp. v. Rudzewicz,* — U.S. —, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985).

2. *Process*

Konishi also argues that the complaint should be dismissed because of insufficient process and insufficient service of process. Fed.R.Civ.P. 12(b)(4), (5). It argues that because the summons and complaint were not properly delivered or translated, this Court never obtained jurisdiction over the defendant.

a. *Service of Process*

Fed.R.Civ.P. 4(e)[6] provides that the authority for effecting foreign service must be found in a federal statute or a statute or court rule of the state in which the district court sits.[7] A method enumerated in the authorizing statute is always sufficient to effectuate service. *See* Advisory Comm. Note to 1963 Amendment to Fed.R.Civ.P. 4. Fed.R.Civ.P. 4(i)[8] "introduces considerable further flexibility by permitting the foreign service ... to be carried out in any of a number of other alternative ways that are also declared to be sufficient." *Id.* The methods described in 4(i) may be limited, however, if a treaty on service exists between the countries of the plaintiff and the defendant. *See* C. Wright & A. Miller, *Federal Practice & Procedure* § 1133 (1985 Supp.) at 258.

The United States and Japan have entered into the Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (The "Hague Convention" or "Convention"), 20 U.S.T. 361, T.I.A.S. No. 6638, *reprinted in* 28 U.S.C.A. Fed.R.Civ.P. 4 (West Supp.1985), which proves a mechanism by which a party who is authorized by the laws of his own country to serve process can do so in a way that is acceptable to the country in which he makes service, *see DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir.), *cert. denied*, 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981).

The Convention outlines several methods for serving judicial documents and permits signatory nations to object to any or all of them. Thus, if authorized to serve abroad

6. Fed.R.Civ.P. 4(e) states:

*Summons: Service Upon Party Not Inhabitant of or Found Within State.*

Whenever a statute of the United States or an order of court thereunder provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of the court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, or (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of the property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

7. Konishi has not questioned the existence of authority under state law for effectuating foreign service under Rule 4(e).

8. Fed.R.Civ.P. 4(i) states, in relevant part:

*Alternative Provisions for Service in a Foreign Country.*

(1) Manner. When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found within the state in which the district court is held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or (C) upon an individual, by delivery to him personally, and upon a corporation or partnership or association, by delivery to an officer, a managing or general agent; or (D) by any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or (E) as directed by order of the court. Service under (C) or (E) above may be made by any person who is not a party and is not less than 18 years of age or who is designated by order of the district court or by the foreign court. On request, the clerk shall deliver the summons to the plaintiff for transmission to the person or the foreign court or officer who will make the service.

under Rule 4(e), a party may serve a document using any Rule 4(i) method, as long as the country receiving service has not objected to it in the Hague Convention or otherwise. *See id.* at 288–89; D. Siegel, Supplementary Practice Commentary C4–34, 28 U.S.C.A. Fed.R.Civ.P. 4 (West Supp. 1985), at 70–71.

On May 31, 1984, this court signed an *ex parte* order under Rules 4(e) and (i) permitting plaintiff to give a copy of the summons and complaint to Wine of Japan for delivery to Konishi. It also allowed plaintiff to arrange for a Japanese attorney to send a second set of the papers to defendant through Japan's postal service. The summons (but not the complaint) mailed to Konishi had been translated into Japanese. A receipt of service was signed by Konishi and returned to the Japanese attorney, who had the receipt translated into English and then forwarded it to plaintiff's attorney in New York.

Konishi contends that because Wine of Japan was and is not the agent of Konishi, delivery of the summons and complaint to the former does not establish jurisdiction over the latter. It also states that the service was insufficient because it is invalid under the Hague Convention. Article Ten of that document reads as follows:

> Provided the State of destination does not object, the present Convention shall not interfere with—
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.
>
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

The government of Japan, however, has specifically objected "to the use of the methods of service referred to in subparagraphs (b) and (c) of Article 10." Hague Convention, 28 U.S.C.A. Fed.R.Civ.P. 4 (West Supp.1985), at 97 n. 12. It permits personal service on a defendant to be made only by a representative of the nation's designated Central Authority, as provided for in Articles Two through Six of the Convention. Thus, Konishi argues, the personal service in Japan was invalid because it was not executed through the Central Authority.

Plaintiff does not challenge the assertion that Wine of Japan is not Konishi's agent for service of process. Rather, it contends that the mail service on Konishi was proper, noting that Japan has not objected to subparagraph (a) of Article Ten, which permits judicial documents to be sent by mail. Konishi points out in response that Section 10(a) refers to "the freedom to *send* judicial documents," while sections 10(b) and 10(c) refer to "the freedom *to effect service* of judicial documents" (emphasis added). Thus, it argues, section 10(a) permits mail delivery only of interlocutory papers such as interrogatories; service of process, in contrast, may be accomplished only through the Central Authority, because Japan has objected to sections 10(b) and 10(c).

"Although there is some merit to the proposed distinction, it is outweighed by consideration of the entire scope of the convention." *Shoei Kako Co., Ltd. v. Superior Court, San Francisco,* 33 Cal. App.3d 808, 821, 109 Cal.Rptr. 402, 411 (1973). In light of the fact that the Convention "purports to deal with the subject of service abroad.... [t]he reference to 'the freedom to send judicial documents by postal channels, directly to persons abroad' would be superfluous unless it was related to the sending of such documents for the purpose of service." *Id.* The only other courts to address this issue have agreed. *See Weight v. Kawasaki Heavy Indus., Ltd.,* 597 F.Supp. 1082, 1085–86 (E.D. Va.1984); *Chrysler Corp. v. General Motors Corp.,* 589 F.Supp. 1182, 1206 (D.D.C. 1984); *see also* Practical Handbook on

the Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, at 15 ("Japan has not declared that it objects to service through postal channels.").

Konishi disagrees with these authorities, noting that it would be incongruous for Japan to require that personal service be made only through the Central Authority but also to permit service by mail. This argument makes sense if one assumes that the only concern is the reliability of the method used. If, however, Japan's interest is in promoting the use of the least intrusive means of notifying its citizens of lawsuits filed against them, it would be logical to permit only representatives of the Central Authority or the postal service to serve process. In other words, Japan may have rejected sections 10(b) and 10(c) because it is more concerned with who is arriving on the doorstep of its citizen to serve process than with how that process is served. If so, there is no incongruity involved in Japan's requirement that service be made only through the mail or the Central Authority.[9]

Accordingly, I conclude that the prevailing interpretation of Article Ten of the Hague Convention as applied to Japan is sound and that the service by mail in this case is therefore proper.

b. *Sufficiency of Process*

Konishi's final contention is that the process itself was insufficient because Article Five of the Convention requires that the papers be translated into Japanese in order for the service to be valid. This argument fails for two reasons.

In the first place, the translation "requirement"[10] is triggered only when it is the Central Authority that serves the document. *See* Hague Convention Article 5, 28 U.S.C.A. Fed.R.Civ.P. 4 (West Supp. 1985), at 88 ("If the document is to be served [by the Central Authority], the Central Authority may require the document to be written in, or translated into, the official language ... of the State addressed."). Where the method used is direct postal service under section 10(a), the document need not be translated. *Weight v. Kawasaki Heavy Indus. Ltd., supra,* 597 F.Supp. at 1086.

In the second place, the summons in this case was translated, so Konishi had actual notice of the existence of the proceeding against it. *See generally Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940) (If form of service "employed is reasonably calculated to give [the defendant] actual notice of the proceedings and an opportunity to be heard.... the traditional notions of fair play and substantial justice ... implicit in due process are satisfied.") (citation omitted). I thus conclude that the fact that the complaint was not translated into Japanese does not render the process insufficient.

### Conclusion

For the reasons stated above, Konishi's motion to vacate the default judgment and dismiss the complaint for lack of jurisdiction is denied.

SO ORDERED.

---

**9.** One court has indicated that in the eyes of the defendant's country, use of the mails might even be preferable to use of the Central Authority. *See Chrysler Corp. v. General Motors Corp., supra,* 589 F.Supp. at 1206 ("[S]ervice ... by registered mail may ... be viewed as the least intrusive means of service—i.e., the device which minimizes the imposition upon the local authorities ...") (quoting *F.T.C. v. Compagnie*

*De Saint-Gobain-Pont-A-Mousson,* 636 F.2d 1300, 1313 & n. 68 (D.C.Cir.1980)).

**10.** The translation provision is actually not even mandatory. It states that the Central Authority *may* require translation. *See* Hague Convention Article 5, 28 U.S.C.A. Fed.R.Civ.P. 4 (West Supp. 1985), at 88.