**CAVALIER LABEL CO., INC. d/b/a/ Young Rebels, Plaintiff,**

v.

**POLYTAM, LTD., Defendant.**

**No. 87 Civ. 3579 (RJW).**

United States District Court, S.D. New York.

May 24, 1988.

---

Cole & Deitz, New York City, for plaintiff; Joseph Di Benedetto, David Florendo, of counsel.

Yerushalmi Shiboleth, Yisraeli & Roberts, New York City, for defendant; Maralyn B. Fairberg, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff, Cavalier Label Co., Inc. ("Cavalier"), brought this action claiming breach of contract and fraud against Polytam, Ltd. ("Polytam"), an Israeli corporation. Polytam has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P. For the reasons that follow, the motion is denied.

## BACKGROUND

Plaintiff Cavalier is a clothing wholesaler based in New York, engaged generally in the business of importing outerwear for resale to retail outlets in the United States. Cavalier is a New York corporation. Its sole office is in New York, and it is not licensed to do business in any other state or foreign country. Bernard Shur is an officer, director and shareholder of Cavalier.

Defendant Polytam is an Israeli manufacturer of women's sportswear. Chaim Steigman is a director of Polytam. His son, Michael Steigman, is an officer and director of Polytam, and at all relevant times was in charge of production. Polytam has never maintained an office, employee, sales agent, or any other continuous contact with New York State. Polytam does not solicit business in the United States, either by means of advertising in the United States, mailings into the United States, or telephone solicitations.

Ami Blachman is a representative of Tredia, which operates in the clothing industry

as a "finder." A finder works independently, introducing manufacturers to wholesale distributors and collecting a commission on contracts that he facilitates. A finder may also serve to supervise production and delivery, and to inspect the goods. Blachman introduced the parties after learning of Cavalier's need for a manufacturing source for coats and determining that Polytam would be best suited for the production of Cavalier's order. Blachman participated in the negotiations between Cavalier and Polytam that led to a contract for the manufacture and delivery of 87,245 women's woolen coats for the fall 1986 selling season. Negotiations commenced in August 1985, and were carried out for the most part through telexes and telephone conversations. The contract was signed February 6, 1986.

Deliveries commenced in March 1986, but Polytam was not able to maintain its production schedule, and Cavalier was dissatisfied with the quality of the coats. The parties differ as to the reasons for these problems. While on a visit to New York in May, Chaim Steigman met with Shur, and the two renegotiated a contract completion date of August 30, 1986, instead of the original date of July 30. Cavalier, however, terminated the contract a few weeks later, claiming that Polytam would be unable to honor the revised delivery schedule and that Polytam's coats would arrive too late for Cavalier to meet its commitments to its retailing customers. Chaim Steigman met once more with Shur in New York on August 8, 1986 to discuss the cancellation of the contract, but it quickly became clear that negotiation would be fruitless, and Steigman returned to Israel after a single day in New York. Michael Steigman also visited New York once in connection with Polytam's business with Cavalier, but the parties differ as to both the timing and the purpose of his visit.

Cavalier filed this action May 22, 1987, claiming breach of contract and fraud. Thereafter, Polytam filed the instant motion to dismiss.

## DISCUSSION

On this motion to dismiss, all pleadings and affidavits are to be construed in the light most favorable to plaintiff Cavalier and all doubts are to be resolved in its favor. *Cutco Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Hoffritz for Cutlery, Inc. v. Amajac Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Because the Court has not conducted an evidentiary hearing in the matter, Cavalier must make out only a *prima facie* case of personal jurisdiction. *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 768 (2d Cir.1983).

In this federal diversity action, defendant Polytam's amenability to suit is to be determined according to the law of the state in which the federal court sits. *Arrowsmith v. United Press Int'l,* 320 F.2d 219 (2d Cir.1963). New York law applies herein. Cavalier asserts that jurisdiction is proper under section 302(a)(1) and section 302(a)(3) of New York's Civil Practice Law and Rules. As the reach of the long-arm statute is in some respects narrower and in other respects broader than the constitutionally permissible outer limits of the Due Process Clause, it is necessary to determine whether the exercise of jurisdiction here will satisfy both. *Cleopatra Kohlique, Inc. v. New High Glass, Inc.,* 652 F.Supp. 1254, 1256 (E.D.N.Y.1987).

### A. *Jurisdiction under Section 302(a)(1)*

Section 302(a)(1) authorizes a court to assert personal jurisdiction over a nonresident defendant who in person or through an agent "transacts any business within the state or contracts anywhere to supply goods or services in the state," as to any cause of action arising out of these acts. N.Y.Civ.Prac.L. & R. § 302(a)(1) (McKinney 1972 & Supp.1988).

### 1. The "Transacting Business" Prong of Section 302(a)(1)

It is doubtful, in light of Polytam's limited contacts with the forum, that Cavalier could establish that defendants have transacted business in New York within the meaning of the statute. The law requires there be "some articulable nexus

between the business transacted and the cause of action sued upon." *McGowan v. Smith,* 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323, 437 N.Y.S.2d 643, 645 (1981) (quoted in *Beacon Enters., Inc. v. Menzies, supra,* 715 F.2d at 764). When assessing whether a defendant's contacts are sufficient to warrant a finding of transaction of business, a court should focus on "the nature and quality of the visits" rather than simply the amount of time spent in the forum. *George Reiner & Co., Inc. v. Schwartz,* 41 N.Y.2d 648, 654, 363 N.E.2d 551, 555, 394 N.Y.S.2d 844, 848 (1977).

Cavalier seeks to attribute to Polytam the activities of Ami Blachman, on the theory that Blachman was Polytam's agent. For an agency relationship to be recognized under section 302, it must be shown that the alleged agent "acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal." *Grove Press, Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir.1981) (applying section 302(a)(2)). *Accord Louis Marx & Co. v. Fuji Seiko Co., Ltd.,* 453 F.Supp. 385, 390 (S.D.N.Y.1978). There has been no such showing here. The very contract sued upon names Blachman as Cavalier's "buying agent." Exhibit A, annexed to Notice of Motion, filed December 4, 1987. Furthermore, Cavalier, in a telex to Polytam, described Blachman as Cavalier's "eyes and ears in Israel." Exhibit B, annexed to Notice of Motion, filed December 4, 1987. Cavalier asserts that Blachman "touted" Polytam to Cavalier, Affidavit of Bernard Shur, filed February 5, 1988 ("Shur Aff.") ¶ 3, and that Polytam paid Blachman's fees. *Id.* ¶ 12. These assertions, though, even if taken as true, do not contradict the documentary evidence and Blachman's own affidavit that he worked as an independent "finder" or perhaps as Cavalier's agent. Cavalier, then, has failed to make out a prima facie case that Blachman operated as Polytam's agent. Accordingly, Blachman's contacts with the forum cannot be attributed to Polytam for purposes of the present motion.

Cavalier also seeks to base personal jurisdiction over Polytam on an alleged visit to New York by Michael Steigman "to finalize the agreement." Cavalier asserts that Michael Steigman's presence in New York "was a large factor in the long awaited 'closing' of the contract in February, 1986." Shur Aff. ¶ 4. Polytam asserts, to the contrary, that Michael Steigman did not visit New York until September of 1986 and that the purpose of his visit was to attempt to mitigate damages. Affidavit of Chaim Steigman, filed December 4, 1987 ("C. Steigman's Dec. Aff.") ¶ 8. Furthermore, Polytam has presented a copy of Michael Steigman's passport, indicating that he did not visit the United States at all between August 1985 and February 1986. Exhibit A, annexed to Affidavit of Michael Steigman, filed February 5, 1988 ("M. Steigman Aff."). Cavalier has not rebutted the documentary evidence presented by Polytam. The Court, then, cannot credit Cavalier's characterization of Michael Steigman's visit to New York and must accept Polytam's version of the visit.

Chaim Steigman met with Bernard Shur twice in New York in connection with the disputed transaction. The first visit occurred on May 22, 1986 while Chaim Steigman was in New York visiting his brother. Steigman and Shur had lunch together, but the parties differ as to the substance of their conversation. *Compare* C. Steigman's Dec. Aff. ¶ 10 *and* Affidavit of Chaim Steigman, filed February 5, 1988 ¶¶ 4, 5 *with* Shur Aff. ¶ 8. Chaim Steigman's second visit to New York occurred in August of 1988 for the purpose of discussing the default on the contract. C. Steigman's Dec. Aff. ¶ 11. Steigman stayed in New York for just one day, and returned directly to Israel when it became clear that further discussion would not be fruitful.

It is doubtful that the totality of Polytam's contacts with the forum—Chaim Steigman's two visits to New York and Michael Steigman's single visit—would be sufficient to confer upon this Court personal jurisdiction over Polytam pursuant to the "transacting business" prong of section 302(a)(1). *See Arrow Trading Co. v. Sanyei Corp. (Hong Kong), Ltd.,* 576 F.Supp. 67, 70–71 (S.D.N.Y.1983) (one visit to forum to inspect allegedly defective merchandise

and a second visit attempting to settle dispute insufficient where claim did not arise out of either of those contacts with forum); *General Instrument Corp. v. TIE Mfg., Inc.*, 517 F.Supp. 1231, 1232 (S.D.N.Y.1981) (where no prior basis for jurisdiction exists, "attempts thereafter to compromise or adjust a dispute as to performance are not sufficient to confer *in personam* jurisdiction upon the courts of New York").

### 2. The "Contracting Anywhere" Prong of Section 302(a)(1)

■ However, the second prong of section 302(a)(1), conferring jurisdiction for claims arising from the contracting out of state for the supply of goods or services in New York, does provide a basis for this Court's personal jurisdiction over Polytam for the contract claim. Enacted in 1979, this provision was intended to " 'extend[ ] New York long arm jurisdiction to [constitutionally] permissible limits so as to give plaintiffs injured in New York a convenient forum.' " N.Y.Civ.Prac.L. & R. § 302 (McKinney Supp.1988) Supplementary Practice Commentary C302:13 at 53 (quoting Report of the Law Revision Commission for 1979, 1979 Leg. Doc. No. 65, McKinney's Session Laws of N.Y. No. 2, p. A–31, A–59 (April 1979)). The amendment abrogated the "mere shipment rule," and provides for jurisdiction where a non-domiciliary enters into a contract to do work in or to send goods into New York, so long as the cause of action arises out of the contract. *Id.* at 53–54.[1]

It is uncontroverted that Polytam contracted to supply women's coats to plaintiff in New York. Polytam was well aware that the coats it produced were destined for New York. The fact that the coats were sent F.O.B. Israel does not alter the result. The court does not believe that the New York State legislature intended to allow potential defendants to escape the reach of the long-arm statute by inserting such terms into their contracts. Although risk of loss may have passed in Israel, it does not alter the practical reality that Polytam contracted to supply, and did in fact ship, goods into New York. This activity places this case squarely within section 302(a)(1). *See Cleopatra Kohlique, Inc. v. New High Glass, Inc., supra*, 652 F.Supp. at 1257–58 (jurisdiction asserted over Italian manufacturer based on shipment to New York F.O.B. Milan of allegedly faulty mascara cases); *Foster Importing Co. v. Creative Food Imports, Ltd.*, No. 83 Civ. 8124 (CHS) (S.D.N.Y. March 14, 1984) [available on WESTLAW, 1984 WL 3657] (LEXIS, Genfed library, Dist file) (defendant had contracted to deliver to New York canned tomatoes F.O.B. Spain).[2]

### B. *Jurisdiction under Section 302(a)(3)(ii)*

Cavalier further asserts that jurisdiction over Polytam is proper pursuant to section 302(a)(3)(ii) of the New York Civil Practice Law and Rules. Section 302(a)(3)(ii) provides as follows:

(a) **Acts which are the basis of jurisdiction.** As to a cause of action arising

---

1. Previously, a non-domiciliary who never came into New York, but who shipped goods into the state pursuant to a contract made outside the state, was not subject to jurisdiction under section 302(a)(1). Mail order houses, then, for example, were able to escape jurisdiction even though they shipped substantial quantities of goods into New York. N.Y.Civ.Prac.L. & R. § 302 (McKinney Supp.1988) Supplementary Practice Commentary C302:13 at 54.

 The amendment had a second effect of extending jurisdiction to non-domiciliaries who make contracts to be performed in New York and then totally fail to perform. *Id.*

2. In *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456 (E.D.N.Y.1986), by contrast, the court refused to rely on section 302(a)(1) as a basis for jurisdiction over the Japanese guaran-

tor of a contract for the sale of wine products to an American distributor F.O.B. Japan. The court reasoned that "[w]hen a foreign corporation sells goods f.o.b. out-of-state, it does not, under section 302(a)(1), perform its contract in New York." *Id.* at 459. The *Lemme* court relied for this proposition on the Second Circuit's opinion in *Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 588–89 (2d Cir.1965). In *Agrashell*, however, the Second Circuit was applying the "transacting business" prong of section 302(a)(1) prior to the 1979 amendment to the statute that added the "contracting anywhere" prong. *Lemme's* reliance on *Agrashell* is, therefore, misplaced. The Court finds *Lemme* unpersuasive and chooses to follow *Cleopatra Kohlique* and *Foster Importing*.

from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent: ....

 3. commits a tortious act without the state causing injury to person or property within the state ..., if he....

 (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Polytam argues that this action is in essence a contract action, and that Cavalier should not be permitted to recast a contract claim into a fraud claim for the purposes of obtaining personal jurisdiction over the defendant.[3] This general proposition is supported in the case law, but does not apply to the instant case. As the Second Circuit explained in *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir.1980):

If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort. But if in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract.

(citations omitted). *Accord Cantor v. Life Alert, Inc.*, 655 F.Supp. 673, 678 (S.D.N.Y. 1987) ("Simply because a set of acts may constitute breach of contract does not mean that they cannot also give rise to liability in tort and provide the predicate for personal jurisdiction under Sec. 302(a)(3).").

■ In the instant case, Cavalier has alleged that Polytam represented that it would install a particular type of pressing machinery at its manufacturing plant and that it would arrange the necessary financing for the purchase of fabric, that Polytam made the representations without the intention of performing, that Cavalier relied on the representations and sustained injuries as a result. Complaint ¶¶ 17–20. Thus, plaintiff has adequately pled a cause of action for fraud. *See Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407, 151 N.E.2d 833, 835, 176 N.Y.S.2d 259, 262 (1958) (elements of a cause of action for fraud are "representation of a material existing fact, falsity, *scienter*, deception and injury"). If these allegations are proved at trial, Polytam would then be "subject to liability *in tort* whether the agreement is enforcible or not." *Id.* at 408, 151 N.E.2d at 836, 176 N.Y.S.2d at 263. Accordingly, there are separate interests at stake in plaintiff's contract and fraud claims, and it is appropriate in this case for the Court to apply section 302(a)(3)(ii) as a jurisdictional predicate for plaintiff's fraud claim. *See Hargrave v. Oki Nursery, Inc., supra,* 636 F.2d at 899.

■ The Court must then determine whether the conditions of section 302(a)(3)(ii) have been met. For personal jurisdiction to attach pursuant to section 302(a)(3)(ii), it must be established that: (1) the defendant committed a tort outside the state; (2) the act caused an injury within the state; (3) the defendant expected or should reasonably have expected the act to have consequences within the state; and (4) the defendant derives substantial revenue from interstate or international commerce. Each element is essential. *E.g., Trafalgar Capital Corp. v. Oil Producers Equip. Corp.*, 555 F.Supp. 305, 310 (S.D.N.Y.1983) (Weinfeld, J.).

---

**3.** Although the Court has concluded that it has personal jurisdiction over Polytam, pursuant to the "contracting anywhere" prong of section 302(a)(1), for the purpose of hearing Cavalier's contract claim against Polytam, the Court must still assess whether it has personal jurisdiction over Polytam to hear Cavalier's fraud claim. The various jurisdictional provisions of section 302 apply only to claims "arising from" the enumerated types of contacts. Accordingly, section 302(a)(1) can provide jurisdiction only as to claims arising from the making of the contract. The fraud alleged here, however, does not arise from the making of the contract, but rather from representations allegedly made prior to the contract. The Court, then, must determine whether section 302(a)(3)(ii) provides a basis for it to hear the fraud claim. *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 324, 402 N.E.2d 122, 124, 425 N.Y.S.2d 783, 785 (1980).

▪ The tort of fraud is considered to be committed where the misrepresentation is uttered. Where a defendant knowingly sends a false statement into a state intending that it be relied upon, he has, for jurisdictional purposes, acted outside the state. *Marine Midland Bank v. Keplinger & Assocs., Inc.*, 488 F.Supp. 699, 703 (S.D.N.Y. 1980) (citing *Kramer v. Vogl*, 17 N.Y.2d 27, 215 N.E.2d 159, 267 N.Y.S.2d 900 (1966)). In the instant case, defendant's principals allegedly made the representations when they were in Israel, and during a meeting of the parties in Italy.

Plaintiff has adequately alleged injury within the state by asserting the loss of New York customers. "[T]he situs of the injury is in the state in which the customers were lost." *Granada Television Int'l, Ltd. v. Lorindy Pictures Int'l, Inc.*, 606 F.Supp. 68, 72 (S.D.N.Y.1984). *Accord Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205–06, 385 N.E.2d 1055, 1058–59, 413 N.Y.S.2d 127, 131–32 (1978). This is not a case where a plaintiff has alleged only remote consequential injuries that occurred in New York solely because the plaintiff is domiciled, incorporated or doing business in the state. *See Friedr. Zoellner (New York) Corp. v. Tex Metals Co.*, 396 F.2d 300, 303 (2d Cir.1968); *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 402 N.E.2d 122, 126, 425 N.Y.S.2d 783, 787 (1980) (collecting cases).

The alleged misrepresentations constitute acts that defendant should reasonably have expected to have consequences within New York state. They were directed to a New York merchant who had commitments to New York customers, and they induced Cavalier to enter into its contract with Polytam. Absent the alleged misrepresentations, it is reasonable to expect that Cavalier would have insisted on additional safeguards to ensure timely performance by Polytam, or indeed might have decided not to deal with Polytam at all. The alleged misrepresentations, then, had the foreseeable effect of causing Cavalier to miss its delivery dates with its New York customers, causing consequences in New York within the meaning of section 302(a)(3)(ii).

▪ Finally, defendant Polytam derives substantial revenues from international commerce. New York courts have applied both a relative scale and an absolute scale in assessing whether revenue is "substantial" for purposes of section 302(a)(3)(ii). A defendant's revenues from interstate and international commerce may be analyzed as a percentage of total revenues, or as an absolute number. *Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 316 (S.D.N.Y.1986) (collecting cases). Since each case must be decided on its own facts, neither approach is binding on the Court, but it may select whichever method is more appropriate in a particular case. *Id.*

▪ In the instant case, the contract in dispute was for the manufacture and sale of 87,245 women's woolen coats. Complaint ¶ 4. The total value of the contract was in excess of $1,000,000. Affidavit of Chaim Steigman, filed February 5, 1988 ¶ 10 (plaintiff was supposed to open a letter of credit for the sum of $1,350,000); *See also* Exhibit I annexed to Order to Show Cause, filed May 27, 1987 ¶ 8 (Cavalier paid Polytam $593,272.50 in consideration for delivery of 40,331 coats). This contract alone is sufficient for Cavalier to make out a prima facie showing that Polytam derived substantial revenue in international commerce. *Compare Path Instruments Int'l Corp. v. Asahi Optical Co.*, 312 F.Supp. 805, 809–10 (S.D.N.Y.1970) (gross revenues of $85,021.45 are "substantial" within the meaning of section 302(a)(3)(ii) in light of the inherent and almost exclusive interstate character of defendant's business). Moreover, there is evidence that Polytam had additional unrelated contracts to supply sportswear to customers in New York. *See* M. Steigman Aff. ¶ 5; C. Steigman's Dec. Aff. ¶ 8. It is appropriate for the Court to consider revenues that have no connection to the alleged tortious act. *Vecchio v. S & T Mfg. Co.*, 601 F.Supp. 55, 57 (E.D.N.Y.1984). All of these circumstances, collectively, compel the Court to conclude that Polytam derives substantial revenues from international commerce, thereby satisfying the final element of section 302(a)(3)(ii).

880

## C. *Due Process Considerations*

 New York State's long-arm statute does provide for this Court's personal jurisdiction over Polytam to hear both Cavalier's contract and fraud claims. The Court must now ensure that applying the state statute under the present circumstances is consistent with the requirements of due process. Due process requires that a defendant have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

Thus, in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the United States Supreme Court held that it was improper for an Oklahoma court to assert jurisdiction over a New York automobile dealer who had sold a car to plaintiffs in New York that was later involved in an accident in Oklahoma. It was insufficient that it might be considered foreseeable that the car sold in New York would pass through Oklahoma. *Id.* at 295–96, 100 S.Ct. at 566. The defendants had no contacts or connections with the forum State such that they "could reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. Personal jurisdiction cannot properly be based on the "mere 'unilateral activity of those who claim some relationship with a nonresident defendant.'" *Id.* at 298, 100 S.Ct. at 567 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)).

In contrast to the petitioners in *World–Wide,* Polytam in the instant case purposefully contracted with a New York wholesaler to supply women's coats to New York. Polytam manufactured its coats in Israel, and then shipped them to Cavalier in New York. Polytam participated in and took advantage of the New York clothing market. Because Polytam, based on its contacts with the forum, could reasonably expect to be haled into a New York court, it is consistent with traditional notions of fair play that this Court assert jurisdiction over Polytam. Application of New York's long-arm statute under the facts of this case does not violate the constitutional protection of due process.

### CONCLUSION

Defendant's motion to dismiss the action for lack of personal jurisdiction is denied. New York State's long-arm statute provides for this Court's jurisdiction over plaintiff's contract and fraud claims. Furthermore, application of the long-arm statute in this case does not violate federal due process guarantees. The parties are directed to complete discovery by July 13, 1988 and to file a joint pretrial order by August 12, 1988.

It is so ordered.