FINEST FRUITS, INC. and L & P
Fruit Corp., Plaintiffs,

v.

Teddy BERTUCA, d/b/a Teddy Bertuca
Co., R & C Distributing Inc., Mark Lev-
inson and Cecil Weinberg, individually
and d/b/a R & C Distributing, Inc.,
Defendants.

No. 88 Civ. 7250 (JMW).

United States District Court,
S.D. New York.

June 1, 1989.

Mark Mandell, New York City, for plaintiffs.

Elliot Epstein, Mineola, N.Y., for defendants.

## MEMORANDUM AND ORDER

WALKER, District Judge:

Defendants move, pursuant to Fed.Rule Civ.P. 12(b) and (c), to dismiss the complaint upon the grounds that: (1) this Court lacks personal jurisdiction over the defendants; (2) venue in this District is improper; (3) the complaint fails to state a claim against each named defendant upon which relief can be granted; (4) there are presently pending formal proceedings with the United States Department of Agriculture, Fruit and Vegetable Division pursuant to 7 U.S.C. § 499a et seq. (Perishable Agricultural Commodities Act, hereafter "PACA") between the parties herein which pertain to the same commodities transactions, parties and matters as set forth in plaintiff's complaint.

### Background

This is the case of the rotten cantaloupes. For the purposes of this motion, the Court takes the facts as alleged in the complaint. Plaintiffs are two New York corporations licensed under the PACA as dealers and commission merchants. During March, 1988, plaintiffs agreed to purchase certain [1] shipments of defendant Bertuca's cantaloupe melons f.o.b. Nogales, Arizona. Defendant Weinberg, allegedly purporting to act as defendant Bertuca's selling broker and sales agent, negotiated the sales with plaintiff's buying agent, Lloyd Myers of Lloyd Myers Co., Inc.

The melons were sent to plaintiffs f.o.b. Arizona on trucks selected and supplied by plaintiffs. When the first shipment arrived in New York, plaintiffs allegedly determined that the shipment contained significant amounts of decay, rejected the produce as failing to meet contracted for standards and requested instructions from defendants as to the handling of the rejected goods. Purportedly, defendant Weinberg, acting as an agent for defendant Bertuca, told plaintiffs to sell the produce for the shipper's account as consignments and assured plaintiffs that the remainder of the melons were in excellent condition and quality. Plaintiffs contend that based upon these representations, they agreed to hold and sell the first shipment on consignment, and agreed to purchase another shipment of melons.

Plaintiffs further allege that they rejected the next two shipments for failing to meet contracted for standards and offered to handle the shipments on consignment as they had the first. Plaintiffs contend that after defendant Weinberg approved sales on consignment, plaintiffs retained and sold the melons in New York and sent the net proceeds to defendant Bertuca's offices in Arizona. The proceed payments were rejected by defendants, and plaintiffs continue to hold such funds in New York.

Defendants do not acknowledge plaintiff's rejection of the goods, and deny having authorized plaintiffs to sell the melons on consignment. In June, 1988, defendant Bertuca instituted formal proceedings with the United States Department of Agriculture, Fruit and Vegetable Division, pursuant to PACA, against plaintiffs seeking payment for the melons sold to defendants.

---

**1.** Plaintiffs allege that they entered into oral contracts for the same and shipment of six truckloads of melons. Defendants in their answer and counterclaim acknowledge contracts for the sale and shipment of five truckloads of melons.

Prior to the time plaintiff's answer was due in the administrative proceeding, plaintiffs commenced the present action.[2] Plaintiffs assert three claims: Count I alleges that defendants breached their oral contracts with plaintiffs under which plaintiffs were to hold and sell the melons on consignment, while Counts II and III allege misrepresentation of and failure to inform plaintiff of discoverable defects in the melons at the time of shipment. Plaintiffs seek a declaratory judgment determining the terms of each of the contracts and transactions and seek monetary damages in the sum of $88,239.93. Defendant Bertuca has asserted two compulsory counterclaims for payment due with respect to the sale and shipment of the truckloads of melons.

## DISCUSSION

In this federal diversity action, defendants' amenability to suit is to be determined according to the law of the state in which the federal court sits. *Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir.1963). Thus, New York law applies. Plaintiffs assert that jurisdiction is proper under C.P.L.R. §§ 302(a)(1) and 302(a)(3)(ii). The Court will examine each alleged jurisdictional basis in turn.

### A. *Jurisdiction Under § 302(a)(1)*

Section 302(a) permits a court to assert jurisdiction over a non-domiciliary who "in person or through an agent (1) transacts any business within the state or contracts anywhere to supply goods and services in the state ...," provided plaintiff's claim arises out of the transaction or contract.

Defendants argue that the contract in question was to be performed in Arizona since control of the melons passed from defendants to plaintiffs in Arizona when plaintiffs took delivery f.o.b. of the melons on their own trucks. In support of its

position, defendants cite *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456 (E.D. N.Y.1986), which held that "[w]hen a corporation sells goods f.o.b. out-of-state, it does not, under section 302(a)(1), perform its contract in New York." *Id.* at 459, *citing Agrashell, Inc. v. Bernard Sirotta Co.*, 344 F.2d 583, 588–89 (2d Cir.1965). Defendants conclude that because they performed their contracts in Arizona by shipping the merchandise f.o.b., no personal jurisdiction exists over the defendant.

Defendants misread plaintiffs' complaint. Plaintiffs do not bring suit under the original f.o.b. sales contracts. Rather, they seek a declaratory judgment and damages under alleged subsequent oral contracts pertaining to consignment sales of the goods following their rejection in New York.[3] At the point these agreements were made, assuming they were indeed made, the goods belonged once again to defendants. The purported agreements merely determined that plaintiffs were to sell defendants' goods, which were located in New York, on consignment in New York. This activity places this case squarely under § 302(a)(1).

Even if the cause of action arose out of the original f.o.b. sales agreements, this Court would have jurisdiction. The New York legislature amended the CPLR expressly to prevent defendants from making just the kind of arguments that defendants advance here. Prior to the 1979 amendment to the CPLR, the prevailing law was that "mere shipment" of goods into New York did not suffice to establish jurisdiction under the CPLR. Mail order houses and other out-of-state shippers, then, were able to escape jurisdiction even when they shipped substantial quantities of goods into New York. The 1979 amendment was intended to " 'extend[ ] New York long arm jurisdiction to [constitution-

---

**2.** After commencing the present action, plaintiffs filed separate answers with the administrative agency requesting stay or dismissal of that proceeding pending final outcome of the within action.

**3.** Plaintiffs clarified at oral argument on February 19, 1989 that they are not bringing a claim under the original oral contract to ship melons into New York. Rather, their claim rests upon an defendants' alleged breach of the new oral contracts pertaining to consignment sales. *See* Complaint ¶¶ 21–22.

ally] permissible limits so as to give plaintiffs injured in New York a convenient forum.' " [4] The amendment abrogated the "mere shipment" rule, and provided for jurisdiction where a non-domiciliary enters into a contract to do work in or to send goods into New York, so long as the cause of action arises out of the contract.

This Court, like several others in this district, does not believe that the New York State legislature intended to allow potential defendants to escape the reach of the long-arm statute by inserting f.o.b. clauses into their contracts. *See e.g., Foster Importing Cp. v. Creative Food Imports, Ltd.*, No. 83 Civ. 8124, 1984 WL 3657 (CHS) (S.D.N.Y. March 14, 1984), *Cleopatra Kohlique Inc. v. New High Glass, Inc.*, 652 F.Supp. 1254 (E.D.N.Y.1987); *Cavalier Label Co., Inc. v. Polytam, Ltd.*, 687 F.Supp. 872 (S.D.N.Y. 1988).[5] The court noted in *Foster Importing* that there is nothing in the statute which indicates that "supply goods in the state" was meant to refer for definition to the law of sales. This Court agrees that "[m]ore likely the legislature intended that supply would be used with its common sense meaning: to provide goods to enter and be used in New York." The defendants did just that by agreeing to cause goods to be shipped into New York.

■ Defendants argue that this case can be distinguished from *Foster Importing, Cleopatra,* and *Cavalier* on the ground that the defendants in those cases did in fact ship the goods into New York while the defendants in this case neither supplied nor operated the shipping vehicles. This argument is without merit. That plaintiffs used their own vehicles to ship the produce is of little significance here. Defendants shipped the melons pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* ("PACA"). Those regulations, at § 46.43(i), govern interstate sales of fresh produce sold and shipped on f.o.b. terms, and provide:

The Buyer [Plaintiffs herein] shall have the right of inspection at destination [New York] before the goods are paid for to determine if the produce shipped complied with the terms of the contract at the time of the shipment ...

The defendants' responsibilities under the PACA did not end after they put the produce on plaintiffs' trucks in Arizona. Plaintiffs reserved the right to reject goods after inspection in New York and in this case allegedly exercised it, thereby causing legal ownership of the goods to revert to defendants. Thus, even though defendants inserted f.o.b. clauses into the contracts and plaintiffs supplied their own shipping vehicles, the "practical reality" is that defendants contracted to supply goods into New York. *Cavalier*, 687 F.Supp. at 877. This activity places this case within § 302(a)(1).

■ However, before a court may apply New York's long-arm statute, it must be satisfied that to do so would be consistent with the constitutional requirements of due process. Due process requires that a defendant have sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

■ Due process is satisfied in this case. Defendants purposely contracted with a New York buyer to supply melons to New York and then allegedly contracted with a New York supplier to sell the goods on consignment. Defendants' goods were located in New York at the time defendants made the alleged consignment agreements. Defendants participated in and took advantage of New York markets. Defendant Bertuca, through his agent, directed offers

---

**4.** N.Y.Civ.Prac.L. & R. § 302 (McKinney Supp. 1988), Supplementary Practice Commentary C302:13 at 53 (quoting Report of the Law Revision Commission for 1979, 1979 Leg.Doc. No. 65, McKinney's Session Laws of N.Y. No. 2, p. A–31, A–59 (April 1979)).

**5.** This Court rejects the court's analysis in *Lemme* since it improperly relied upon *Agrashell*—a case which was decided 14 years before the 1979 amendments to the CPLR which substantially broadened the reach of New York's long-arm statute.

into New York which were accepted by plaintiffs which have their only place of business in New York. Because defendants, based on their contacts with this forum, could reasonably be expected to be hauled into a New York Court, it is consistent with traditional notions of fair play that this Court assert jurisdiction over defendants. Application of New York's long-arm statute under the facts of this case does not violate the constitutional protection of due process.

### B. *Jurisdiction Under § 302(a)(3)*

Although the Court has concluded that it has personal jurisdiction over defendants pursuant to § 302(a)(1) for the purpose of hearing plaintiffs' contract claim against defendants, the Court must still assess whether it has personal jurisdiction over defendants to hear plaintiffs' fraud claim. As Judge Ward noted in *Cavalier:*

> The various jurisdictional provisions of section 302 apply only to claims "arising from" the enumerated types of contacts. Accordingly, section 302(a)(1) can provide jurisdiction only as to claims arising from the making of the contract.

687 F.Supp. at 878, n. 3. The fraud alleged here does not arise from the making of the contract, but rather from representations allegedly made prior thereto. The Court, then, must determine whether § 302(a)(3)(ii) provides a basis for it to hear the fraud claims. *Id., citing Fantis Foods, inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 324, 425 N.Y.S.2d 783, 785, 402 N.E.2d 122, 124 (1980).

Section 302(a)(3)(ii) provides in pertinent part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent: ...
>
> 3. commits a tortious act without the state causing injury within the state ..., if he ...

> (ii) expects or should reasonably expect the acts to have consequences in the state and derives substantial revenue from interstate or international commerce.

Defendants argue that this action is a contract action, and that plaintiffs should not be permitted to recast a contract claim into a fraud claim for the purposes of obtaining personal jurisdiction over the defendant. Plaintiffs, on the other hand, argue that the Second Circuit in *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir.1980) "settled the question of holding an out-of-state seller of agricultural products shipped to New York subject to jurisdiction of the District Court in New York for its fraudulent acts connected with the sale." P.Mem. at 4. Indeed, in holding a California shipper of grape vines subject to § 302(a)(3) jurisdiction for the shipper's alleged misrepresentations in connection with the interstate sales, the Second Circuit noted:

> If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort. But if in addition there is an interest in protecting the plaintiff from other kinds of harm, the plaintiff may recover in tort whether or not he has a valid claim for breach of contract.

636 F.2d at 899. *Accord Cantor v. Life Alert, Inc.*, 655 F.Supp. 673, 678 (S.D.N.Y. 1987).

Nevertheless, plaintiffs in the present case have not set forth all the elements of an action in tort for fraudulent representations, namely, "representation of a material existing fact, falsity, scienter, deception and injury." *Channel Master Corporation v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958). In particular, plaintiffs nowhere allege that defendants knowingly made any fraudulent misrepresentations which plaintiffs relied upon to their detriment.[6] As pleaded, the case

---

**6.** Plaintiffs' complaint alleges that "as the direct result of defendants Bertuca and/or Levinson's breach of the said contracts, their knowing fail-ure to perform their duties under PACA and the PACA regulations, and their failure to inform plaintiffs of known or discoverable defects in

at bar merely is one for breach of contract. Therefore, § 302(a)(3)(ii) does not provide for jurisdiction over defendants with respect to plaintiffs' fraud claims. Since plaintiffs have not alleged any alternative basis for jurisdiction with respect to the fraud claims, these claims must be dismissed.

## C. Venue

28 U.S.C. § 1391 provides as follows:

A civil action wherein jurisdiction is not founded upon diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose except as otherwise provided by law.

Where the claim arose in more than one district, "a plaintiff may choose between those two (or conceivably more) districts that with approximately equal plausibility —in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim." *Leroy v. Great Western*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979).

Applying *Leroy*, the Court finds that New York venue is proper in this case. The produce was examined pursuant to PACA in New York by New York expecters. Damages were calculated in New York and the goods were allegedly sold in New York. The goods were in New York when the purported consignment agreements were made. Under these circumstances, plaintiffs' choice of forum should not be disturbed.

## D. Failure to State a Claim Upon Which Relief Can Be Granted

Defendants also allege that plaintiffs' complaint fails to state any claims upon which relief can be granted. This Court has already held that plaintiffs have failed to adequately plead fraud for the purpose of establishing jurisdiction under § 302(a)(3)(ii). Thus, Counts II & III are dismissed. The Court, however, must examine whether Count I sets forth a cause of action for breach of contract.

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, the court takes the allegations of the challenged complaint as true. Defendants contend that plaintiffs have not suffered damage. This allegation simply is irrelevant to the question of whether plaintiffs have pled damages. Since they have done so, along with every other element of a cause of action for breach of contract, the Court will not dismiss Count I.

## E. The Pending Administrative Proceedings

Defendants further contend that the complaint should be dismissed because defendant has already instituted formal proceedings with the United States Department of Agriculture, Fruit and Vegetable Division, pursuant to PACA, seeking payment for the melons sold and shipped to the plaintiffs by the defendant. That proceeding, however, has been stayed pending this Court's determination. From review of all submissions and after extensive oral argument, the Court is unconvinced that plaintiffs' claims will be adequately addressed in the pending administrative proceeding. Thus, the Court will neither stay nor dismiss the proceeding at this time.

### CONCLUSION

This Court has jurisdiction to hear plaintiffs' breach of contract claim, which has been properly pleaded. Plaintiffs' fraud claims, however, are dismissed. This case shall proceed accordingly.

SO ORDERED.

---

the commodities at the times of shipment, plaintiffs were induced to enter into the purchase agreements all to plaintiffs' damage in the sum of $88,239.98." Complaint ¶ 29. This does not state a cause of action for fraud.